IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stoneledge at Lake Keowee Owners Association, Inc.,     )<br>)<br>)<br>Plaintiff,     )<br>)<br>v.     )<br>)<br>)<br>Cincinnati Insurance Company and Builders )<br>Mutual Insurance Company,     )<br>)<br>)<br>Defendants.     )<br>———————————————————)| Civil Action No. 8:14-cv-01906-BHH<br><br><br>**ORDER** |

Plaintiff Stoneledge at Lake Keowee Owners Association, Inc. ("Plaintiff" or "HOA") filed the instant action against Defendant Cincinnati Insurance Company ("CIC") in the Oconee County Court of Common Pleas in March of 2014; the matter was removed on May 13, 2014. (*See generally* Dkt. No. 1.) On December 15, 2014, the parties filed a Consent Motion to Stay, asking that the case *sub judice* be stayed "until such time as the underlying South Carolina State Court action Stoneledge At Lake Keowee Owners' Association Inc. v. IMK Development Company, LLC, Case No. 2009-CP-37-0652 (hereinafter 'the underlying case')" was concluded. (Dkt. No. 23.) The parties noted that the underlying action was tried to a verdict in November of 2013, but, at the time the Consent Motion to Stay was filed, "post-trial motions, including motions to determine set-offs from settlements Plaintiff made with other underlying defendants, remain[ed] pending." (Dkt. No. 23 at 1-2.) The Honorable Bruce Howe Hendricks granted the Consent Motion to Stay on December 16, 2014. (Dkt. No. 24.)

On November 5, 2015, Plaintiff filed a Motion to Lift the Stay, asserting that the "underlying trial court has ruled on all post-trial motions, judgments have been entered, and the underlying defendants have appealed to the South Carolina Court of Appeals." (Dkt. No. 26 at 1.) CIC opposed the motion because the underlying case was on appeal. (*See generally* Dkt. No. 27.) Judge Hendricks

granted the Plaintiff's motion on June 20, 2016. (Dkt. No. 31.) On June 30, 2016, CIC filed a Motion for Reconsideration of Judge Hendricks' Order; she denied the Motion for Reconsideration on August 30, 2016. (Dkt. No. 34; Dkt. No. 38.) On September 14, 2016, Plaintiff filed a Motion to Amend its Complaint, stating that it "seeks to amend its Complaint for filing in this Court to add allegations related to the underlying litigation and to join Builders Mutual Insurance Company as an additional defendant." (Dkt. No. 40 at 1.) Judge Hendricks granted Plaintiff's motion, and on September 16, 2016, Plaintiff filed an Amended Complaint, wherein Builders Mutual Insurance Company ("Builders") was added as a Defendant. (*See* Dkt. No. 41; Dkt. No. 42.)

Defendant CIC answered the Amended Complaint and filed a counterclaim seeking a declaratory judgment. (Dkt. No. 44.) Defendant Builders also answered the Amended Complaint and filed a counterclaim seeking a declaratory judgment. (Dkt. No. 50.)

On April 28, 2017, Defendants filed a Motion to Stay. (Dkt. No. 66.) On April 28, 2017, Defendant Builders filed a Motion for Summary Judgment, (Dkt. No. 67), as did Plaintiff, (Dkt. No. 81). Also on April 28, 2017, Defendant CIC filed a Motion for Partial Summary Judgment. (Dkt. No. 80.) On August 18, 2017, Defendants filed a Motion to Certify Questions to the Supreme Court of South Carolina. (Dkt. No. 103.) The Motion to Stay and Motion to Certify Questions to the Supreme Court of South Carolina have been referred to the undersigned. (Dkt. No. 109.)

On February 22, 2018, the undersigned held a hearing on the Motion to Stay and the Motion to Certify Questions to the Supreme Court of South Carolina. (Dkt. No. 114.) As allowed at the hearing, Plaintiff filed a Reply pertaining to Defendants' reformulated proposed certified questions. (Dkt. No. 118.)

## **ALLEGED FACTS**

Plaintiff alleges that it "is a South Carolina non-profit corporation that manages a horizontal property regime known as Stoneledge at Lake Keowee, consisting of 80 dwelling units located on

Lake Keowee in Oconee County, South Carolina." (Am. Compl. ¶ 1.) Plaintiff further alleges that it "brought suit against Marick Home Builders, LLC ('Marick Builders'), and against its principal and member Rick Thoennes ('Theonnes') [sic] (referred to collectively as the 'Insureds') . . . relating to the construction of Stoneledge at Lake Keowee (hereinafter the 'Project') in Oconee County, South Carolina, Civil Action No. 2009-CP-37-0652 (the 'Underlying Action')." (Am. Compl. ¶ 2.)[1] According to Plaintiff, it "is a judgment creditor of the Insureds" and "has standing to sue CIC and Builders Mutual to satisfy the judgment and stipulated damages." (Am. Compl. ¶ 6.)

Plaintiff alleges that CIC issued a Commercial General Liability policy to Marick Builders and that Builders Mutual issued a policy to the Insureds. (Am. Compl. ¶¶ 9-10.) According to Plaintiff, Thoennes is an insured under both policies. (Am. Compl. ¶ 11.) The insured tendered the Underlying Action to their insurance carriers "requesting that their carriers provide a defense and indemnify the Insureds in the event they incurred losses as a result of the Underlying Action." (Am. Compl. ¶ 13.) The "Underlying Action was divided for trial into two separate actions, Phase I and Phase II." (Am. Compl. ¶ 14.)

As to Phase I, the jury found in favor of the HOA, and against Marick and Thoennes; "[j]udgment was entered against Marick and Thoennes, which was subsequently amended by order dated January 30, 2015, to an amount, after credit for set-offs, of $2,144,088.23, which is accruing interest at the statutory rate." (Am. Compl. ¶¶ 15-16.) Plaintiff alleges that in the Underlying Action, "the HOA alleged, and the evidence establishes[,] that as a direct and proximate result of the negligence of the Insureds, physical injury to tangible property occurred, as well as damage to the work of others, including loss of use, with such damage being caused by the continuous repeated exposure to the same general harmful conditions." (Am. Compl. ¶ 17.) In anticipation of the Phase II trial, the HOA, Marick, Thoennes, and the Insurers "stipulated that the damages the HOA would

---

[1] Herein, the undersigned spells Mr. Rick Thoennes' name as "Thoennes."

be entitled to recover from Marick" and Thoennes was $2,000,000.00 "and that trial for the sole purpose of establishing the exact amount of damages was unnecessary." (Am. Compl. ¶ 19.) Plaintiff alleges the "HOA and the Insurers agreed to proceed with a declaratory judgment action for determination of coverage for HOA's Total Phase II Damages under the policies issued by the Insurers." (Am. Compl. ¶ 20.) Plaintiff seeks "a Declaratory Judgment that CIC and Builders Mutual are obligated to pay the Phase I Judgment and the Total Phase II Damages plus post-judgment interest." (Am. Compl. ¶ 26.)

## DISCUSSION

## A. Motion to Stay (Dkt. No. 66)

As noted above, on December 15, 2014, the parties filed a Consent Motion to Stay, asking that this case be stayed until the underlying state action was concluded; the parties noted that although the underlying action was tried to a verdict in November of 2013, at the time the Consent Motion to Stay was filed, "post-trial motions, including motions to determine set-offs from settlements Plaintiff made with other underlying defendants, remain[ed] pending." (Dkt. No. 23 at 1-2.) Judge Hendricks granted the Consent Motion to Stay on December 16, 2014. (Dkt. No. 24.)

On November 5, 2015, Plaintiff filed a Motion to Lift the Stay, asserting that the "underlying trial court has ruled on all post-trial motions, judgments have been entered, and the underlying defendants have appealed to the South Carolina Court of Appeals." (Dkt. No. 26 at 1.) CIC opposed the motion because the underlying case was on appeal. (*See generally* Dkt. No. 27.) Judge Hendricks granted that motion on June 20, 2016. (Dkt. No. 31.) In that Order, Judge Hendricks stated, *inter alia*,

> The Court recently granted a renewed motion to stay in a companion matter (Civil Action No.: 8:14-cv-293-BHH) brought by Stoneledge HOA against CIC, concerning different insured entities than those at issue here, and arising from the same judgment in the Underlying Suit. (*See* C/A No. 8:14-cv-293, ECF No. 70.) In that companion case, the Court found that a stay was appropriate after considering the so-called "*Nautilus* factors" to determine whether that federal declaratory

judgment action should continue to proceed in light of the pendency of the parallel state court appeal, namely:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (citing *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir.1998)). There, the Court found that factor three presented the clearest reason to grant a stay.

The Court has again considered the *Nautilus* factors, and finds that the instant case does not present the same potential for entanglement between the state and federal proceedings. Specifically, unlike the companion matter, there are no claims for bad faith refusal to settle and improper claims practices in the case *sub judice*. Additionally, the Court finds that a continued stay in the instant case does not offer the same potential to maximize judicial economy. In the companion case, there is an open question as to whether Stoneledge HOA's claims against defendant American Home Assurance Company regarding an umbrella policy are viable in the first instance, given the prerequisite that the applicable limits of any underlying insurance coverage must first be exhausted. Resolution of the state court appeal will assist the Court in answering that question definitively. There are no such issues in the instant case, and the utility of a continued stay is therefore diminished. The remainder of the *Nautilus* factors are not significantly implicated by the posture of this case. The Court finds that there is a ripe dispute between the parties and the declaratory judgment action will proceed.

(Dkt. No. 31 at 2-4.)

On June 30, 2016, CIC filed a Motion for Reconsideration of Judge Hendricks' Order. (Dkt.

No. 34.) Judge Hendricks denied that motion in the following Text Order:

TEXT ORDER denying 34 Motion for Reconsideration re 31 Order on Motion to Lift Stay. This matter is before the Court on Defendant's Motion to Reconsider the Court's June 20, 2016 Order (ECF No. 31) granting Plaintiff's motion to lift a stay that had been in place, pursuant to a consent motion of the parties (ECF No. 23), since December 16, 2014 (ECF No. 24). The stated ground for Defendant's Motion is that the factors the Court considered in ordering that the stay be lifted relate to abstention, whereas the Court should have been focused particularly on the issue of ripeness and the risk that the Court might issue an improper advisory opinion if it allowed the case to proceed. (See ECF No. 34 at 1-3.) Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment. Am. Canoe Assn v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003) (citation omitted). This is because a district court

retains the power to reconsider and modify its interlocutory judgments... at any time prior to final judgment when such is warranted. Id. at 514-15 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir.1991); see also United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003) (A court may revisit interlocutory orders at any time prior to final judgment under Fed. R. Civ. P. 54(b) or its inherent authority.). Although the strict standards applicable to motions for reconsideration brought pursuant to Fed. R. Civ. P. 59 do not apply to motions for reconsideration of interlocutory orders, District courts in the Fourth Circuit look to the standards of motions under [Rule 59] for guidance. Long v. OReillys Auto. Stores, Inc., C/A No. 6:12-901-MGL, 2014 WL 2864589, at *2 (D.S.C. June 23, 2014) (citing R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co., C/A No. 4:024184RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); Akeva L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 56566 (M.D.N.C.2005)); see also Pure Fishing, Inc. v. Normark Corp., C/A No. 3:10-2140-CMC, 2012 WL 4009628, at *1 (D.S.C. Sept. 12, 2012) affd, 564 F. Appx 601 (Fed. Cir. 2014) (This court finds the standard applicable to reconsideration of final orders useful, though non-binding.). As with a motion under Rule 59, appropriate reasons for granting reconsideration [of an interlocutory order] are: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. Long, 2014 WL 2864589 at *2. None of the predicate reasons for granting reconsideration of the Court's Order lifting the stay are present here, and the Court declines to reconsider that ruling. Defendant insists that the issue of whether the stay should be maintained turns on the ripeness of the dispute, but makes this untenable argument while simultaneously acknowledging that the underlying tort case was tried to verdict and findings of fact were made therein. (See ECF No. 34 at 3-5.) In this context, what Defendant is really asking the Court to do is defer action on the case sub judice until the appeals in the underlying tort case are complete. See Princeton Excess & Surplus Lines Ins. Co. v. Immigration Centers of Am. - Farmville, LLC, No. 3:12-CV-895, 2013 WL 6246366, at *6 (E.D. Va. Nov. 21, 2013) ([T]he real issue in this case is not whether there is a case or controversy or whether the matter is ripe for decision, it is whether the [c]ourt should defer acting on [the plaintiff's] request for declaratory judgment until the State Litigation is concluded.). For reasons already explained in the Order, the Court does not see the same need for and benefit from a continued stay in this action as in the parallel action, Stoneledge at Lake Keowee Owners' Association, Inc. v. Cincinnati Insurance Company, et al., No. 8:14-CV-293-BHH. Accordingly, the Motion to Reconsider is denied and the case will proceed. Signed by Honorable Bruce Howe Hendricks on 8/30/16.

(Dkt. No. 38.)

Undeterred by Judge Hendricks' previous rulings, on April 28, 2017, CIC and Builders Mutual filed the instant Motion to Stay, asking that the court "stay this action with respect to coverage for Phase I of the Stoneledge project." (Dkt. No. 66-1 at 1.) Defendants contend that "a

ruling on coverage for Phase I at this time would be improper because the evidence upon which such

a ruling must be based is not yet final." (Dkt. No. 66-1 at 1.) Defendants state, *inter alia*,

> Marick's appeal is not yet resolved. As a result, the basis for any ruling as to
> the amount of coverage for Phase I does not yet exist. If the Court of Appeals rules
> in favor of Marick, the result could be, among other things, a new trial. (See Exh. D:
> Appellant's Final Brief at pp. 38-39.) Thus, the issues in this case are not ripe until
> the appeal is resolved and the judgment becomes final. See Ellett Bros., Inc. v. U.S.
> Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) (holding that an insurer's duty
> to indemnify is based upon factual findings in the underlying case). Any declaration
> this Court issues as to the amount of coverage for Phase I is subject to becoming
> moot because the Phase I litigation is not yet completed.
>         Due consideration of the issues pending on appeal demonstrates that Marick
> and Thoennes' arguments have merit and a real possibility exists that the current
> Phase I judgments may be reversed or modified. Several of the trial judge's rulings
> during the Phase I trial appear to be inconsistent with current South Carolina law.

(Dkt. No. 66-1 at 3.) Defendants point to numerous particulars in which they contend the state

court's rulings are erroneous. (*See* Dkt. No. 66-1 at 3-8.) Defendants contend that the grounds they

have identified "are by no means the only potential grounds for reversal in the pending appeal of the

Phase I judgments," but "these grounds sufficiently demonstrate that the issues Marick raised on

appeal create a substantial question as to whether the existing judgments will stand." (Dkt. No. 66-1

at 8.) Defendants assert that "[i]f the Phase I judgments are modified on appeal, it would moot any

declaration this Court issues as to the amount of coverage for Phase I." (Dkt. No. 66-1 at 8.)

Although Judge Hendricks has already twice ruled, the issue here is whether the instant

action--the insurance coverage dispute--should be stayed while the underlying case is on appeal.

Defendants cited no law in support of the stay in their Memorandum in Support of Their Motion to

Stay as to Phase I; the law Defendants cited therein was in their explanation of how the state court

erred. In their Reply, Defendants contend their request to stay is based on the court's inherent

authority as well as Rule 16 of the Federal Rules of Civil Procedure.[2] (Dkt. No. 92 at 2.)

---

[2]Citing Rule 16(b)(4), Defendants state, "The Federal Rules provide that a scheduling order may be modified
upon a showing of good cause." (Dkt. No. 92 at 2.)

In previously analyzing this question, Judge Hendricks looked to the factors set forth in *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). (*See* Dkt. No. 31.) Courts have used the *Nautilus* factors in assessing whether a federal declaratory judgment action should be stayed. *See Auto-Owners Ins. Co. v. Essex Homes Se., Inc.*, Civ. A. No. 3:14-CV-02164-MGL, 2014 WL 4748689, at *3 (D.S.C. Sept. 23, 2014); *Zurich Am. Ins. Co. v. Public Storage*, 697 F. Supp. 2d 640 (E.D. Va. 2010). The *Nautilus* factors include:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;
>
> (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and
>
> (iv) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable.

*Nautilus*, 15 F.3d at 377 (internal quotation marks and citations omitted). Of these factors, "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding" is significant. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996).

In arguing for the stay, Defendants contend that the "hardship or inequity" they will face if Defendants' request to stay is denied is that "Defendants have repeatedly raised . . . the possibility that this Court could award a judgment based upon facts that are subsequently reversed upon appeal in the underlying case." (Dkt. No. 92 at 2-3.) Defendants recognize that if the Court finds coverage exists under some of the policies, "a second question arises as to how much of Plaintiff's claim is covered." (Dkt. No. 92 at 3.) Defendants assert that "[t]he question as to the amount of coverage raises the potential for unnecessary entanglement with the underlying action under the third <u>Nautilus</u> factor due to overlapping issues of fact." (Dkt. No. 92 at 3.) Defendants further contend that "the amount Marick becomes legally obligated to pay as damages is ascertained in the underlying action, whereas the amount of those damages to which Defendants' policies apply is determined by an

allocation in this action between damages awarded for faulty workmanship as opposed to resulting water damage." (Dkt. No. 92 at 3.)

Judge Hendricks has already ruled on this request two times, and Defendants essentially seek to stay this case while the appeal of the underlying action is pending in state court. Although it is clear Defendants would like the matter to be stayed pending the outcome of the appeal, Defendants have not cited--and the undersigned has not found--any authority indicating a stay is appropriate due to the appeal. *Cf. RTF Mgmt. Co. v. Gilbert*, Civ. A. No. 8:10-02503-HFF, 2011 WL 13142633, at *4 (D.S.C. May 24, 2011) ("This case leads the Court to believe that, if presented with the issue, South Carolina courts would find a judgment rendered by a trial court to be final for preclusion purposes even while it is pending on appeal. . . . Determining that South Carolina courts would reach this conclusion is in harmony with the majority rule." (citation omitted)).

Turning to the *Nautilus* factors, the coverage issues in this action are not going to be resolved in the state action, so the coverage issues cannot be more efficiently resolved in the state action. It does not appear this declaratory judgment action is being used for procedural fencing; in fact, the HOA filed this action, not the insurance companies, and all parties agreed to stay the instant declaratory judgment action until the underlying state action was resolved (and it was stayed until that time). As to the first factor, while the state court certainly has some interest in deciding matters of state insurance coverage, "that alone provides no reason" for the stay, *Nautilus*, 15 F.3d at 378, though courts have discretion to abstain "when the questions of state law involved are difficult, complex, or unsettled," *Nautilus*, 15 F.3d at 378. The case *sub judice* will undoubtedly require analysis of the Supreme Court of South Carolina's 2017 decision in *Harleysville Group Insurance v. Heritage Communities, Inc.*, 420 S.C. 321, 803 S.E.2d 288 (2017). However, it is worth noting that CIC removed the instant action from the Oconee County Court of Common Pleas, and in light of the similarities between *Harleysville* and the case *sub judice*, it is not clear to the undersigned that the questions of state law involved are difficult, complex, or unsettled.

As to the factor of "unnecessary entanglement between the federal and state court systems," the state court action has proceeded to a judgment, and that judgment is on appeal now. While it is

possible that judgment could be reversed or modified, as noted above, the issues of insurance coverage are not being litigated in that case. Defendants' Motion to Stay (Dkt. No. 66) is therefore DENIED. *See e.g., Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 968 (4th Cir. 1994) ("Regarding the third *Nautilus* factor, the federal court's resolution of the issues on the instant case would not have resulted in unnecessary entanglement of the state and federal court systems. The personal injury tort issues that would be litigated between Lorello and Fuscardo in state court are discrete from those issues involving insurance coverage which Continental Casualty sought to have adjudicated in the federal court."); *Astorg Motor Co. v. Westfield Ins. Co.*, 866 F. Supp. 964, 967-68 (S.D. W. Va. 1994) (analyzing *Nautilus* factors in denying a motion to dismiss, stating, *inter alia*, that the action in federal court "differs from the tort action in state court," and "[b]ecause the state court has not been confronted with the issues involved in this declaratory action, it is difficult to see how the state court could resolve this action more effectively or efficiently," and "As in *Nautilus*, the issues being litigated in the state court action are quite different from those being litigated in the federal declaratory judgment action. Additionally, as noted above, the disputes in state and federal courts do not involve the same parties. [Furthermore], it does not appear that the coverage issues presented here are involved in the state court tort action. Accordingly, no entanglement will occur if this Court resolves the declaratory judgment action.").

## B. Motion to Certify (Dkt. No. 103)

In moving to certify questions, Defendants note that "[i]n this declaratory judgment action to determine liability coverage for a judgment against a general contractor named in underlying construction defect litigation," Plaintiff "relied almost entirely upon a single appellate decision," *Harleysville Group Insurance v. Heritage Communities, Inc.*, 420 S.C. 321, 803 S.E.2d 288 (2017), "that was not final while dispositive motions were being briefed." (Dkt. No. 103-1 at 1.) Defendants state,

> Defendants hereby move to certify certain questions to the Supreme Court of South Carolina because numerous questions of law affect the applicability of the final <u>Harleysville</u> opinion to this case. The court's analysis in the <u>Harleysville</u> opinion is based upon representations of prior South Carolina law and factual

findings which, whether made by the parties or left unchallenged, are inconsistent with the state of the law at the time. As a result, insurers (and their legal counsel) that attempted to follow South Carolina law prior to <u>Harleysville</u> would be seriously prejudiced if the <u>Harleysville</u> opinion is retroactively applied.

(Dkt. No. 103-1 at 1-2.) Defendants specifically point to the following in the *Harleysville* opinion: "the special referee's finding that . . . Harleysville 'controlled the defense of the insureds in the underlying action.'" (Dkt. No. 103-1 at 3.) Defendants assert that, in the case *sub judice*, "no evidence has been submitted that Defendants 'controlled' the defense." (Dkt. No. 103-1 at 3.)

Plaintiff asserts that in seeking certification, Defendants "seek delay." (Dkt. No. 106 at 1.) According to Plaintiff, "Defendants seek certification of seventeen (17) questions because they disagree with [the] South Carolina Supreme Court's recent jurisprudence and profess to seek an opportunity to persuade the Supreme Court to change its mind." (Dkt. No. 106 at 1.) Plaintiff further asserts that "[e]ven if the Defendants persuaded this Court . . . that the South Carolina Supreme Court's ruling was made improvidently, certification is not proper; if the state court has already determined what the law is, a federal court, which disagrees with that statement of the law, should not certify a question in the hope of persuading the state court to say something else." (Dkt. No. 106 at 1-2.) Plaintiff states,

> The Plaintiff does not, as Defendants contend, argue that because of the *Harleysville* decision, the Defendants have retroactively waived all coverage issues.[3] Instead, the Plaintiff asserts that the *Harleysville* decision provides clear instruction on how the South Carolina Supreme Court would rule given the fact pattern present here because it has ruled precisely on those issues in *Harleysville*, which is directly on point factually. This Court is not required in this diversity case to predict how South Carolina's highest court would rule because *Harleysville* provides the law.

(Dkt. No. 106 at 5.)

Due to the importance of the *Harleysville* decision, the undersigned first begins with a discussion of that decision, followed by an analysis of the request to certify questions. *Harleysville* involved declaratory judgment actions to determine coverage under Commercial General Liability

---

[3]In a footnote, Plaintiff states, "Plaintiff does contend Defendants waived their rights but not that they retroactively waived them." (Dkt. No. 106 at 5 n.3.)

("CGL") policies issued by Harleysville Group Insurance. *See Harleysville Group Insurance v. Heritage Communities, Inc.*, 420 S.C. 321, 803 S.E.2d 288 (2017). The Riverwalk and Magnolia North developments were constructed between 1997 and 2000, and "[a]fter construction was complete and the units were sold, the purchasers became aware of significant construction problems, including building code violations, structural deficiencies, and significant water-intrusion problems." *Harleysville*, 420 S.C. at 329, 803 S.E.2d at 292. The property owners' associations ("POAs") filed suit "for the extensive construction defects under theories of negligent construction, breach of fiduciary duty, and breach of warranty." *Id*. at 329, 803 S.E.2d at 292.[4]

The Supreme Court of South Carolina noted that "[d]uring the period of construction from 1997 to 2000, the various Heritage entities each maintained several liability insurance policies with Harleysville with per-occurrence limits totaling between $3,000,000 and $4,000,000 on the primary policies and between $9,000,000 and $13,000,000 on the excess liability policies." *Id*. at 329-30, 803 S.E.2d at 293. After receiving notice of the lawsuits against its insureds, Harleysville informed them "that it would provide for their defense," and Harleysville "contends this was done under a full reservation of rights." *Id*. at 330, 803 S.E.2d at 293. According to the *Harleysville* opinion, "Harleysville's efforts to preserve its rights were generic statements of potential non-coverage coupled with furnishing most of the Heritage entities with copies (through a cut-and-paste method) of the insurance policies." *Id*. at 330, 803 S.E.2d at 293. There was "no dispute that Harleysville would control the litigation," and Harleysville contended "that all coverage issues would be litigated following the entry of any adverse jury verdict." *Id*. at 330, 803 S.E.2d at 293.

At the outset of each trial, "Harleysville's counsel for Heritage conceded liability, and in both trials, the trial court directed a verdict in favor of the POA on the negligent construction cause of action." *Id*. at 330, 803 S.E.2d at 293. Accordingly, "the only contested issue in the underlying trials was the nature and extent of the damage resulting from the admitted negligent construction." *Id*. at 331, 803 S.E.2d at 293. In the Magnolia North matter, the jury returned a general verdict of

---

[4]As to Riverwalk, "individual homeowners also filed a class action to recover damages for the loss of use of their property during the repair period." *Harleysville*, 420 S.C. at 329, 803 S.E.2d at 293.

$6.5 million in actual damages and $2 million in punitive damages. *Id*. at 331, 803 S.E.2d at 294. In the Riverwalk suit, the jury returned a general verdict of $4.25 million in actual damages and $250,000 in punitive damages in favor of the POA; the jury also returned a verdict of $250,000 in loss-of-use damages and $750,000 in punitive damages as to the class action. *Id*. at 331, 803 S.E.2d at 294.

"Following these general jury verdicts against its insureds," Harleysville filed declaratory judgment actions "to determine what portions of the judgments in the underlying construction-defect lawsuits would be covered under Heritage's CGL policies." *Id*. at 331, 803 S.E.2d at 294. Harleysville argued it had "no duty to indemnity Heritage for these judgments." *Id*. at 331, 803 S.E.2d at 294. However, "if any of these damages were found to be covered, Harleysville sought an accounting to somehow parse the jury verdicts and determine which portion of the juries' general verdicts constituted covered damages" and further argued "it could be responsible for only that portion of damages occurring during the period of time its policies provided coverage." *Id*. at 331, 803 S.E.2d at 294.

The matter was referred to a Special Referee, who stayed the matter until *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011), was resolved. *Harleysville*, 420 S.C. at 331-32, 803 S.E.2d at 294. The court in *Harleysville* noted the following findings of the Special Referee:

> Ultimately, the Special Referee found coverage under the policies was triggered because the juries' general verdicts included some covered damages. Although the Special Referee found that the costs to remove and replace the faulty workmanship were not covered under the policies, the Special Referee concluded that it would be improper and purely speculative to attempt to allocate the juries' general verdicts between covered and non-covered damages. Accordingly, the Special Referee ordered the full amount of the actual damages in the construction-defect suits would be subject to Harleysville's duty to indemnify in proportion with its time on the risk. The Special Referee made factual findings regarding the dates of the progressive damages period and the period during which Harleysville provided coverage. The Special Referee thereafter calculated Harleysville's pro rata portion of the progressive damages based on Harleysville's time on the risk. Lastly, the Special Referee found punitive damages were covered and that no policy exclusion applied to preclude coverage for any portion of those damages.

*Harleysville*, 420 S.C. at 332, 803 S.E.2d at 294.

The Supreme Court of South Carolina stated that the "threshold question in determining coverage under a CGL policy is whether the claim at issue is for 'property damage' caused by an 'occurrence' . . . . " *Id.* at 333, 803 S.E.2d at 295. The court noted that "[a]lthough *Crossmann* represented a sea change in terms of adopting the time-on-the-risk approach," it "left unchanged the basic concept . . . that the cost of repairing faulty workmanship is not covered under CGL policies but resulting property damage beyond the defective work product itself is covered." *Harleysville*, 420 S.C. at 336, 803 S.E.2d at 296.

The Supreme Court of South Carolina first addressed Harleysville's contention that the Special Referee "erred in finding it failed to properly reserve the right to contest coverage." *Id.* at 336, 803 S.E.2d at 296. The question was "whether a reservation of rights letter that merely provides the insured with a copy of the policy, coupled with a general statement that the insurer reserves all of its rights, is sufficient," and the court held that "it is not." *Id.* at 336, 803 S.E.2d at 296. The court stated that "it is axiomatic that an insured must be provided sufficient information to understand the reasons the insurer believes the policy may not provide coverage." *Id.* at 337-38, 803 S.E.2d at 297. The court agreed with the Special Referee "that generic denials of coverage coupled with furnishing the insured with a copy of all or most of the policy provisions (through a cut-and-paste method) is not sufficient." *Id.* at 338, 420 S.E.2d at 297. The letters at issue in *Harleysville* were described as follows:

> The[] letters explained that Harleysville would provide a defense in the underlying suits and listed the name and contact information for the defense attorney Harleysville had selected to represent Heritage in each matter. These letters identify the particular insured entity and lawsuit at issue, summarize the allegations in the complaint, and identify the policy numbers and policy periods for policies that potentially provided coverage. Additionally, each of these letters (through a cut-and-paste approach) incorporated a nine- or ten-page excerpt of various policy terms, including the provisions relating to the insuring agreement, Harleysville's duty to defend, and numerous policy exclusions and definitions. Despite these policy references, the letters included no discussion of Harleysville's position as to the various provisions or explanation of its reasons for potentially denying coverage. With the exception of the claim for punitive damages, the letters failed to specify the

particular grounds upon which Harleysville did, or might thereafter, dispute coverage.

*Harleysville*, 420 S.C. at 340, 803 S.E.2d at 298-99.[5] The Supreme Court of South Carolina noted the "stark contrast" between the "specific grounds for contesting coverage for punitive damages" and the "non-specific-'we will let you know later'-purported reservation of rights." *Id*. at 341, 803 S.E.2d at 299. The court stated, "It is reasonable to conclude that Harleysville knew precisely how to protect its interests, but elected to be purposefully vague on all coverage matters except punitive damages." *Id*. at 341, 803 S.E.2d at 299.

The court in *Harleysville* found "[s]ignificant[]" that "none of the reservation letters advised Heritage of the need for allocation of damages between covered and non-covered losses or referenced a possible conflict of interest or Harleysville's intent to pursue a declaratory judgment action following any adverse jury verdicts in the underlying lawsuits." *Id*. at 341, 803 S.E.2d at 299. The court stated, *inter alia*,

> "The right to control the litigation carries with it certain duties," including "the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages." *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1498 (10th Cir. 1994) (citations omitted) (explaining "[i]f the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories" (citing *Duke v. Hoch*, 468 F.2d 973, 979 (5th Cir. 1972))). Therefore, by "virtue of its duty to defend, an insurer gains the advantage of exclusive control over the litigation," and "it would be unreasonable to permit the insurer to not disclose potential bases for denying coverage." *Id*. (internal citations and quotation marks omitted); *see Desert Ridge Resort*, 141 F.Supp.3d. at 966–68 (explaining that where an insurer undertakes and exclusively controls the defense of the insured under a reservation of rights, prior to undertaking the defense, the insurer must specify in detail any and all bases upon which it might contest coverage in the future since "[g]rounds not identified in the reservation of rights may not be asserted

---

[5]As to punitive damages, the letters stated,
The complaint filed against you seeks punitive damages. [Harleysville] reserves the right to disclaim coverage for these since under all of your policies, they would not arise from an "occurrence," do not fit the definition of "bodily injury" or "property damage," and/or were "expected and intended" within the meaning of exclusions in the policies.
*Harleysville*, 420 S.C. at 340-41, 803 S.E.2d at 299.

later by the insurer"); *id.* (explaining the existence of a potential conflict of interest between insured and insurer is what requires the insured to set forth the bases upon which it might contend damages are not covered in a greater amount of detail than would otherwise be required); *Weber v. Biddle*, 4 Wash.App. 519, 483 P.2d 155, 159 (1971) (underscoring that when an insurer controls the defense of the action against its insured, "a high fiduciary duty [i]s owed by the insurer to the insured" and observing a "general notice of reservation of rights failing to refer specifically to the policy provision upon which the insurer wished to rely may be insufficient").

The Special Referee thoroughly analyzed the letters to determine whether Harleysville properly reserved its rights. As to the substance of Harleysville's letters to Heritage, the Special Referee found the letters were not sufficiently specific to put Heritage on notice of Harleysville's specific defenses, particularly as to the need for an allocated verdict.

Perhaps in recognition of the inadequacy of the letters, Harleysville additionally relied on an oral reservation of rights based on conversations with representatives of Heritage. The Special Referee considered this argument (and the evidence advanced by Harleysville) and concluded that even if an oral reservation is permitted in South Carolina, the oral reservations Harleysville claimed to have communicated to the principals of the defunct Heritage entities "fall short of the specificity [required] and are ambiguous at best," noting "[p]roviding timely and specific policy defenses and disclosing actual or potential conflicts are important fiduciary duties of the insurer[,] especially when, as here, Harleysville is controlling the defense of its insured." The Special Referee concluded that Harleysville failed to properly reserve its rights to dispute coverage as to actual damages and, thus, Harleysville was precluded from attempting to do so in this action.

Here, except as to punitive damages, Harleysville's reservation letters gave no express reservation or other indication that it disputed coverage for any specific portion or type of damages. Nor did the letters or testimony indicate that, in the event Heritage was found liable in the construction-defect suits, Harleysville intended to file the instant lawsuit to contest various coverage issues. Specifically, Harleysville did not expressly put its insureds on notice that it intended to litigate the issues of whether any damages resulted from acts meeting the definition of occurrence, whether any damages occurred during the applicable policy periods, and what damages were attributable to non-covered faulty workmanship. And in no way did the letters inform the insureds that a conflict of interest may have existed or that they should protect their interests by requesting an appropriate verdict. As the Fifth Circuit found in *Duke v. Hoch*, Harleysville's reservation "was no more than a general warning" and "too imprecise to shield [the insurer]." 468 F.2d 973, 979 (5th Cir. 1972). We find there is evidence in the record to support the Special Referee's finding that Harleysville's reservation letters were insufficient to reserve its right to contest coverage of actual damages, and therefore, we affirm. Because we find

Harleysville did not effectively reserve the right to contest coverage, we need not address Harleysville's claims of error regarding various policy exclusions.

*Harleysville*, 420 S.C. at 341-44, 803 S.E.2d at 299-301.

Although Defendants originally sought certification of seventeen questions, (*see* Dkt. No. 103-1 at 13-14), at the hearing, Defendants narrowed their request to the following questions:

1. What are the elements that must be proved to establish waiver/estoppel under *Harleysville*?
    a. As applies to ROR's?
    b. Do non-waiver provisions in insurance policies preclude waiver as applied to RORs?

2. Do *Harleysville* and *Newman* prevent insurers from litigating coverage in separate declaratory judgment actions:
    a. If yes, does this apply only to allocation of general verdicts or to all coverage issues?
    b. What requirements must an insurer meet to preserve its right to contest coverage in a separate action?

3. Does waiver under *Harleysville* apply to settlement agreements where the parties agreed to litigate coverage in a declaratory action?

(Hr'g Ex.)

Rule 244(a) of the South Carolina Rules of Appellate Procedure provides as follows:

The Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States or the highest appellate court or an intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

S.C. R. App. P. 244(a). As explained in *Roe v. Doe*, 28 F.3d 404 (4th Cir. 1994),

Federal courts in diversity cases apply the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern. *Wilson v. Ford Motor Co.*, 656 F.2d 960, (4th Cir.1981); *Empire Distributors of N.C. v. Schieffelin & Co.*, 859 F.2d 1200, 1203 (4th Cir.1988); *Doe v. Doe*, 973 F.2d 237, 240 (4th Cir.1992). Only if the available state law is clearly insufficient should the court certify the issue to the state court. *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 848 (1985).

*Roe*, 28 F.3d at 407.

The undersigned concludes that certification is not warranted. As to the second question, it does not appear to the undersigned that an answer is necessary in order to adjudicate the case *sub judice*. Instead, the question appears to focus on the next insurance coverage dispute; certification is therefore not warranted. *See Henry v. Gov't Emps. Ins. Co.*, 275 F. Supp. 3d 750, 755 (D.S.C. 2017) (declining to certify where "[t]he question Plaintiff seeks to certify to the Supreme Court of South Carolina is not outcome determinative in this case"); *Ashmore v. Sullivan*, Civ. A. No. 8:15-cv-00563-JMC, 2016 WL 6927888, at *1 (D.S.C. Nov. 28, 2016) (denying the Motion to Certify Questions of State Law where, *inter alia*, the proposed questions "are not outcome determinative"); *see also Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1120 & n.11 (10th Cir. 2008) ("Because this question is not dispositive in this case, we decline to certify it and likewise hold that the district court did not abuse its discretion in denying the motion to certify.").

As to the first and third questions, the undersigned cannot conclude that available state law is clearly insufficient. Defendants appear to have several arguments as to why *Harleysville* is distinguishable, and therefore does not mandate a particular outcome in the case *sub judice*. (*See* Dkt. No. 107 at 2.) The undersigned expresses no opinions on those argument herein. However, to the extent Defendants seek certification as to what elements must be proved to establish waiver/estoppel under *Harleysville*, the *Harleysville* opinion itself provides significant guidance as to that question. Although the court did not specifically outline elements, the court noted that the reservation of rights letters "gave no express reservation or other indication that it disputed coverage for any specific portion or type of damages" (except punitive damages); the insurer did not put the insured on notice "that it intended to litigate the issues of whether any damages resulted from acts meeting the definition of occurrence, whether any damages occurred during the applicable policy periods, and what damages were attributable to non-covered faulty workmanship"; and the insurer did not "inform the insureds that a conflict of interest may have existed or that they should protect

their interests by requesting an appropriate verdict." *Harleysville*, 420 S.C. at 342-43, 803 S.E.2d at 300.

Defendants additionally seek certification of whether "non-waiver provisions in insurance policies preclude waiver as applied" to reservation of rights letters. In responding to Plaintiff's Motion for Summary Judgment, Defendants point to the following language in their policies:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

(*See* Dkt. No. 78 at 39 of 46 as to Builders Mutual; Dkt. No. 82-9 at 2 of 69 as to CIC.) Defendants assert that this provision "prevents the terms of the policy from being modified by doctrines such as waiver and estoppel" and contend that "[t]he policies at issue in <u>Harleysville</u> did not contain this language." (Dkt. No. 89 at 6-7.) The opinion in *Harleysville* did not address this particular provision. *See Harleysville*, 420 S.C. 321, 803 S.E.2d 288. Although Defendants contended in their briefing on Plaintiff's Motion for Summary Judgment that the policies in *Harleysville* did not contain the provision, at the hearing before the undersigned, counsel for Defendants stated his "position would be we don't know" whether the policies in *Harleysville* contained that language.[6] Contrary to Defendants' arguments, the undersigned is not persuaded that certification is warranted as to this question. The courts in South Carolina have indicated that, at least in certain circumstances, "a nonwaiver provision in a policy may be waived like any other provision." *Welch v. N.Y. Life Ins. Co.*, 183 S.C. 9, 189 S.E. 809, 814 (1936); *see also* 44 Am. Jur. 2d Insurance § 1585 ("In general, policy provisions which limit the power of insurance agents or other representatives of the insurer to waive conditions of the policy or to restrict the manner in which waivers may be made do not supersede the recognized principles of the law of waiver and estoppel and are not so conclusive as to prevent the officers or agents of the insurer through whom it must act in the transaction of its

---

[6]While the *Harleysville* opinion itself does not address this provision, it appears the policies contained the identical language to which Defendants now point. (*See* Dkt. No. 118-2 at 47 of 50.)

business and the conduct of its affairs from binding the insurer by a waiver of a condition or from creating an estoppel against it to assert a breach of condition in avoidance of the policy. In other words, a nonwaiver clause may itself be waived." (footnotes omitted)).

The third question Defendants seek to certify pertains to whether "waiver under *Harleysville* appl[ies] to settlement agreements where the parties agreed to litigate coverage in a declaratory action." The *Harleysville* case did not involve settlement agreements. In the case *sub judice*, however, there is a settlement agreement as to Phase II between Plaintiff; Marick Home Builders, LLC; Rick Thoennes; CIC; and Builders Mutual. (*See* Dkt. No. 81-13.) The agreement states, *inter alia*,

> WHEREAS, The Stoneledge development was constructed in two phases. Likewise, the Underlying Lawsuit was divided for trial into two separate actions, Phase I and Phase II; and

> WHEREAS Plaintiff obtained a judgment against Defendants in Phase I on November 8, 2013, which was subsequently amended by order of the court dated January 30, 2015, in the net amount, after credit for set-offs, of $2,144,088.23, which is accruing interest at the judgment rate (the Phase I Judgment); and

> WHEREAS, in anticipation of the trial of Phase II against the Defendants, the Parties have agreed to compromise certain aspects of this claim in the form of a stipulation of damages, as set forth more fully below, and to release certain obligations of Rick Thoennes altogether.

> **NOW, THEREFORE, IN CONSIDERATION** of the promises, covenants and agreements contained herein, the parties hereto agree as follows:
> . . .

> 1. For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree that the damages sustained by the Plaintiff in connection with Phase II, as more fully set forth in the Underlying Lawsuit, are approximately and may exceed the sum of Five Million Six Hundred Thousand ($5,600,000.00) Dollars. Furthermore, the Defendants and Insurers are entitled to an offset of approximately Three Million Six Hundred Thousand and ($3,600,000.00) Dollars, representing amounts the Plaintiff has received from other sources. Therefore, the Parties stipulate that the damages which Plaintiff would otherwise be entitled to recover from the Defendants, subject to the terms of this Settlement Agreement and resolution of all coverage issues currently pending, is Two Million ($2,000,000.00) Dollars (hereinafter "Plaintiff's Total Phase II Damages").

Accordingly, trial for the sole purpose of establishing the exact amount of the Plaintiff's damages for Phase II is unnecessary.

2. The Plaintiff and Insurers agree to proceed with a declaratory judgment action for a determination of coverage under the policies issued by Cincinnati and Builders Mutual referenced above. Insurers will pay to Plaintiff the total sum of "covered damages," as defined herein. The parties agree that "covered damages" means the amount of Plaintiff's Total Phase II Damages that are covered for purposes of indemnification under the above-referenced Cincinnati and Builders Mutual policies, as determined by a final judgment in the above-referenced declaratory judgment action, after exhaustion of any appeals, up to a maximum of two Million ($2,000,000.00) Dollars (hereinafter "the Phase II Covered Damages"). This is not intended to be and does not limit the right of Plaintiff to also pursue recovery of sums related to the Phase I Judgment, except as expressly provided for herein, and subject to Defendants' appeal of the Phase I Judgment.

(Dkt. No. 81-13 at 2-3 of 7.)

The undersigned concludes that certification is not warranted as to the third question. The undersigned notes that the case in *Harleysville* concerned the sufficiency of the reservation of rights letters, an issue that has been raised in the case *sub judice*. While *Harleysville* involved a general jury verdict, and Phase II of the case *sub judice* involves a settlement agreement, Phase I of this case involves a jury verdict, and the reservation of rights letters at issue as to Phase I are the same letters at issue as to Phase II. While the parties disagree as to the import of the *Harleysville* decision, and the undersigned does not intend to make any ruling herein limiting the District Judge's analysis of the issues in the pending Motions for Summary Judgment, the undersigned cannot conclude state law is "clearly insufficient" as to the issue raised. *See Simpson v. Duke Energy Corp.*, 191 F.3d 448 (4th Cir. 1999) (unpublished table decision) ("Even '[w]here there is no case law from the forum state which is directly on point, the district court [must] attempt[ ] to do as the state court would do if confronted with the same fact pattern.'" (quoting *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994))).[7]

_____

[7]The undersigned further notes that this case was originally filed in state court, but Defendant CIC removed it to federal court. *Cf. Simpson*, 191 F.3d 448, 1999 WL 694444, at *3 ("We are especially hesitant to overrule the district court's decision denying certification where the party seeking certification is the same party that sought federal jurisdiction in the first place and, by extension, federal interpretation of state law." (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984))).

Accordingly, Defendants' Motion to Certify Questions to the Supreme Court of South Carolina (Dkt. No. 103) is denied.

## **CONCLUSION**

Wherefore, it is ORDERED that Defendants' Motion to Stay (Dkt. No. 66) and Defendants' Motion to Certify Questions to the Supreme Court of South Carolina (Dkt. No. 103) are DENIED.

IT IS SO ORDERED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

March 13, 2018
Charleston, South Carolina