IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Stoneledge at Lake Keowee Owners Association, Inc., | ) ) ) | |
| Plaintiff/Counter Defendant, | ) ) | Civil Action No. 8:14-cv-01906-BHH |
| v. | ) ) ) | |
| Cincinnati Insurance Company and Builders Mutual Insurance Company, | ) ) ) ) | **OPINION AND ORDER** |
| Defendants/Counter Claimants. | ) ) ) | |

This matter is before the Court on the following motions: (a) a Motion for Summary Judgment filed by Defendant Builders Mutual Insurance Company ("Builders Mutual") (ECF No. 67); (b) a Motion for Partial Summary Judgment filed by Defendant Cincinnati Insurance Company ("CIC")[1] (ECF No. 80); and (c) a Motion for Summary Judgment filed by Plaintiff Stoneledge at Lake Keowee Owners Association, Inc. ("Plaintiff" or "HOA") (ECF No. 81). For the reasons set forth herein, the Motion for Summary Judgment filed by Builders Mutual (ECF No. 67), and the Motion for Partial Summary Judgment filed by CIC (ECF No. 80), are both denied. Plaintiff's Motion for Summary Judgment (ECF No. 81) is granted.

## PROCEDURAL BACKGROUND

Plaintiff HOA filed the instant action against Defendant CIC in the Oconee County Court of Common Pleas in March of 2014; the matter was removed on May 13, 2014. (*See* ECF No. 1.) On December 15, 2014, the parties filed a Consent Motion to

---

[1] In this Order, Builders Mutual and CIC are referred to collectively as "Defendants."

1

Stay, asking that the case *sub judice* be stayed "until such time as the underlying South Carolina State Court action Stoneledge At Lake Keowee Owners' Association Inc. v. IMK Development Company, LLC, Case No. 2009-CP-37-0652 (hereinafter 'the underlying case')" was concluded. (ECF No. 23.) The parties noted that the underlying action was tried to a verdict in November 2013, but "post-trial motions, including motions to determine set-offs from settlements Plaintiff made with other underlying defendants, remain[ed] pending." (*Id.* at 1-2.) The Consent Motion to Stay was granted on December 16, 2014. (ECF No. 24.)

On November 5, 2015, Plaintiff filed a Motion to Lift the Stay, asserting that the "underlying trial court has ruled on all post-trial motions, judgments have been entered, and the underlying defendants have appealed to the South Carolina Court of Appeals." (ECF No. 26 at 1.) CIC opposed the motion because the underlying case was on appeal. (*See generally* ECF No. 27.) The stay was lifted on June 20, 2016. (ECF No. 31.) On September 14, 2016, Plaintiff filed a Motion to Amend its Complaint, stating that it "seeks to amend its Complaint for filing in this Court to add allegations related to the underlying litigation and to join Builders Mutual Insurance Company as an additional defendant." (ECF No. 40 at 1.) Plaintiff's Motion to Amend was granted, and on September 16, 2016, Plaintiff filed an Amended Complaint, wherein Builders Mutual was added as a Defendant. (*See* ECF Nos. 41 & 42.)

CIC answered the Amended Complaint and filed a counterclaim seeking a declaratory judgment. (ECF No. 44.) Builders Mutual also answered the Amended Complaint and filed a counterclaim seeking a declaratory judgment. (ECF No. 50.)

On April 28, 2017, Defendants filed a Motion to Stay. (ECF No. 66.) On April 28,

2

2017, Builders Mutual filed a Motion for Summary Judgment (ECF No. 67), as did Plaintiff (ECF No. 81). Also on April 28, 2017, CIC filed a Motion for Partial Summary Judgment. (ECF No. 80.) On August 18, 2017, Defendants filed a Motion to Certify Questions to the Supreme Court of South Carolina. (ECF No. 103.) The Motion to Stay and Motion to Certify Questions to the Supreme Court of South Carolina were referred to Magistrate Judge Mary Gordon Baker. (ECF No. 109.)

On March 13, 2018, Judge Baker denied both the Motion to Stay and the Motion to Certify Questions to the Supreme Court of South Carolina. (ECF No. 119.) The parties' respective Motions for Summary Judgment are ripe for adjudication.

## FACTUAL BACKGROUND

Plaintiff is a South Carolina non-profit corporation that manages a horizontal property regime known as Stoneledge at Lake Keowee, consisting of eighty (80) dwelling units located on Lake Keowee in Oconee County, South Carolina. (Am. Compl. ¶ 1, ECF No. 42.) Plaintiff brought suit against, *inter alia*, Marick Home Builders, LLC ("Marick"), and against its principal and member Rick Thoennes ("Theonnes") (referred to collectively as the "Insureds"), relating to the construction of Stoneledge at Lake Keowee (hereinafter the "Project") in Oconee County, South Carolina, Civil Action No. 2009-CP-37-0652 (the "Underlying Action"). (*Id.* ¶ 2.) In the Underlying Action, Plaintiff alleged that Marick and Thoennes acted as the general contractor for certain dwelling units at the Project. (Underlying Third Am. Compl. ¶¶ 19, 53-54, ECF No. 68 at 9, 16-17.) Plaintiff averred that defective construction of the Project led to water intrusion and physical damage to the dwelling units, and asserted causes of action against Marick and Thoennes for negligence and breach of warranty. (*Id.* ¶¶ 62-64, 70-80.) Plaintiff

3

further alleged that Marick and Thoennes placed certain Stoneledge dwelling units into the stream of commerce, acting in concert with another defendant in the Underlying Case, IMK Development Co., LLC and its principals (collectively "IMK"). Plaintiff asserted that Marick was the alter ego of Thoennes, that Marick and IMK were so amalgamated as to blur the legal distinction between them, and that they should be treated as one and the same and held jointly liable on all theories of liability, including Breath of the Implied Warranty of Habitability, Breach of the Implied Warranty of Workmanlike Service, Negligence, and Breach of Fiduciary Duty. (*Id.* ¶¶ 49-54.) Plaintiff prevailed in the Underlying Action, became a judgment creditor of the Insureds, and brought the instant action against CIC and Builders Mutual (collectively "the Insurers" or "Defendants") to satisfy the judgment and stipulated damages. (Am. Compl. ¶ 6, ECF No. 42.) This is a declaratory judgment action to determine liability coverage.

CIC issued Commercial General Liability ("CGL") policies to Marick, and Builders Mutual issued CGL policies to the Insureds. According to Plaintiff, Theonnes is an insured under both policies given that he is principal and member of Marick. (*Id.* ¶ 11.) The Insureds tendered the Underlying Action to their insurance carriers "requesting that their carriers provide a defense and indemnify Insureds in the event they incurred losses as a result of the Underlying Action." (*Id.* ¶ 13.) Just as the Project had been constructed in two phases, "the Underlying Action was divided for trial into two separate actions, Phase I and Phase II." (*Id.* ¶ 14.)

As to Phase I, the jury found in favor of the HOA, and against Marick and Thoennes; "[j]udgment was entered against Marick and Thoennes, which was subsequently amended by order dated January 30, 2015, to an amount, after credit for

set-offs, of $2,144,088.23, which is accruing interest at the statutory rate." (hereinafter the "Phase I Judgment") (*Id.* ¶¶ 15-16.) Plaintiff alleges that in the Underlying Action, "the HOA alleged, and the evidence establishes[,] that as a direct and proximate result of the negligence of the Insureds, physical injury to tangible property occurred, as well as damage to the work of others, including loss of use, with such damage being caused by the continuous repeated exposure to the same general harmful conditions . . . ." (*Id.* ¶ 17.) In anticipation of the Phase II trial, the HOA, Marick, Theones, and the Insurers "stipulated that the damages the HOA would be entitled to recover from Marick and Theonnes" was $2,000,000.00 ("Total Phase II Damages") "and that trial for the sole purpose of establishing the exact amount of damages was unnecessary." (*Id.* ¶ 19.) Plaintiff alleges the "HOA and the Insurers agreed to proceed with a declaratory judgment action for determination of coverage for HOA's Total Phase II Damages under the policies issued by the Insurers." (*Id.* ¶ 20.) Plaintiff seeks "a Declaratory Judgment that CIC and Builders Mutual are obligated to pay the Phase I Judgment and the Total Phase II Damages plus post-judgment interest." (*Id.* ¶ 26.)

In their Answers to the Amended Complaint, by way of counterclaim, CIC and Builders Mutual seek declarations that: (1) the policies at issue do not provide coverage to the extent the claims are for defective work only, not "property damage" caused by an "occurrence;" (2) the policies do not provide coverage for any alleged breaches of contract or warranty in the Underlying Action; (3) the policies do not provide coverage to the extent the "property damage" did not occur during the policy period; (4)(a)—CIC's formulation—coverage does not exist for "coverage terms" beginning after Marick received knowledge of the "property damage" as defined in the policy, (4)(b)—Builders

Mutual's formulation—the claims for damage in the Underlying Action are for "property damage" to the work of Marick and/or Thoennes that was caused by their alleged defective work and are not covered because they are excluded; (5) the policies do not provide coverage for the alleged defective work in the Underlying Action because it is excluded, regardless of whether it was performed by Marick or its subcontractors; (6) any mold or mildew damage in the Underlying Action is not covered because it is excluded; and (7) Rick Thoennes is not an insured to the extent that he fails to qualify as such under applicable provisions of the policies. (*See* CIC Answer, ECF No. 44 at 8-11; Builders Mutual Answer, ECF No. 50 at 8-11.)

## LEGAL STANDARDS

**Summary Judgment**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Where the Court is presented with the question of whether an insurance policy

covers a particular claim, in the absence of a genuine dispute regarding the underlying facts, summary judgment is the proper mechanism by which to determine whether coverage is available. *See OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 939 (4th Cir. 2007) ("Because the facts are undisputed and we are presented with a purely legal question of insurance coverage, the case is ripe for summary judgment.").

**South Carolina Insurance Law**

In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction," and the "cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Auto Owners Ins. Co. v. Benjamin*, 781 S.E.2d 137, 141 (S.C. Ct. App. 2015) (quoting *Whitlock v. Stewart Title Guar. Co.*, 732 S.E.2d 626, 628 (S.C. 2012)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* Where the terms of an insurance policy are ambiguous or conflicting, courts must construe those terms "liberally in favor of the insured and strictly against the insurer." *Id.* In other words, "where policy provisions may be reasonably interpreted in more than one way, the court must use the interpretation most favorable to the insured." *CAMICO Mut. Ins. Co. v. Jackson CPA Firm*, No. 2:15-cv-1823-PMD, 2016 WL 7403959, at *8 (D.S.C. Dec. 22, 2016) (citing *State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 136 (S.C. Ct. App. 2000)). "'[T]he Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print.'" *State Farm Fire & Cas. Co. v. Morningstar*

8

*Consultants, Inc.*, C.A. No.6:16-cv-01685-MGL, 2017 WL 2265919, at \*2 (D.S.C. May 24, 2017) (quoting *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 407 (2014)) (alteration in original). However, "[this] doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language," *id.* (quoting *Bell*, 757 S.E.2d at 407), and "the insurer's duty under a policy of insurance . . . cannot be enlarged by judicial construction." *Id.* (citing *S.C. Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. 1990)). "[C]lauses of inclusion should be broadly construed in favor of coverage, and when there are doubts about the existence or extent of coverage, the language of the policy is to be 'understood in its most inclusive sense.'" *Cook v. State Farm Auto. Ins. Co.*, 656 S.E.2d 784, 786 (S.C. Ct. App. 2008) (quoting *Buddin v. Nationwide Mut. Ins. Co.*, 157 S.E.2d 633, 635 (1967)). "Courts should not, however, 'torture the meaning of policy language in order to extend' or defeat coverage that was 'never intended by the parties.'" *Cook*, 656 S.E.2d at 786-87 (quoting *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547, 550 (S.C. 1975)). "The court's duty is limited to the interpretation of the contract made by the parties themselves regardless of its wisdom or folly, apparent unreasonableness, or failure of the parties to guard their interests carefully." *B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) (quotation marks, alteration, and citation omitted).

Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388-89 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)); *D.R. Horton, Inc. v. Maryland Cas. Co.*, No. 2:12-CV-3353-RMG, 2014 WL 12617300, at \*3 (D.S.C. Mar. 21, 2014).

## DISCUSSION

As noted above, multiple Motions for Summary Judgment are pending. (ECF Nos. 67, 80, and 81.) Before addressing the parties' arguments, the undersigned reviews relevant policy provisions.

## A. Policy Provisions

Generally speaking, the insurance policies provide as follows:[2]

**1. Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period; and
(3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph 1.d. below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.
. . .
d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":
(1) Reports all, or any pert, of the "bodily injury" or "property damage" to us or any other insurer;
(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";
(3) First observes, or reasonably should have observed, the "bodily injury" or "property damage";
(4) Becomes aware, or reasonably should have become aware, by any means other than described in (3) above, that "bodily injury" or "property damage" had occurred or had begun to occur; or
(5) Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

---

[2] There are multiple insurance policies, issued by two separate insurance companies, that are relevant in this case. Each relevant policy is itemized below. (*See infra* at 23-24.) The insuring language of the Builders Mutual policies is materially similar to the CIC policies quoted here.

(ECF No. 81-15 at 15.) The term "'insured' means any person or organization qualifying as such under **SECTION II-WHO IS AN INSURED**." (*Id.*)[1]

The policies contain certain exclusions, including, *inter alia*:

**2. Exclusions**
This insurance does not apply to:
. . .
**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract." Such defense payments will not reduce the limits of insurance.
. . .
**j. Damage to Property**
"Property Damage" to:
. . .

---

[1] **SECTION II-WHO IS AN INSURED**
1. If you are designated in the Declarations as:
a. An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.
. . .
c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
. . .
(ECF No. 81-15 at 25.) The named insureds on policy CPP 364 95 24 are "Marick Home Builders LLC and Rick Thoennes Builders." (*Id.* at 1.) The "Legal Entity/Business Description" is listed as "Limited Liability Company." (*Id.*) From a review of information available on the South Carolina Secretary of State's website, "Rick Thoennes Builders, Inc." was incorporated effective December 9, 1996 and dissolved on October 23, 1997, which is long before the coverage period of this policy (April 1, 2008 to April 1, 2009). (*See id.*) A court may properly take judicial notice of matters of public record. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(ECF No. 81-15 at 16, 19-20.)

**B. The Parties' Arguments**

**(1) CIC's Motion for Partial Summary Judgment (ECF No. 80) and Builders Mutual's Motion for Summary Judgment (ECF No. 67)**

In its Motion for Partial Summary Judgment, CIC argues that its 2010-11 and 2011-12 policies do not provide coverage for the at-issue loss "because they took effect after the [Underlying Action] was commenced." (ECF No. 80-1 at 10-11.) CIC further argues that its 2009-10 policy does not provide coverage, because Marick and Thoennes (Marick's principal) "were on notice of [the original plaintiff's] claim even before" the coverage term went into effect, and the Stoneledge HOA "was aware of significant construction defects as early as January 31, 2009." (*Id.* at 11.) CIC asserts that "coverage exists under only [its] 2008-09 policy." (*Id.* at 14.) As to its 2008-09 policy, CIC argues as follows: (a) the breach of warranty action is not covered, as such a claim is based upon contract, and "Stoneledge's claim that Marick and Thoennes breached an implied warranty by failing to replace or repair their defective work does not trigger coverage under the insuring agreement" (*Id.* at 14-15); (b) the breach of fiduciary duty claim is not covered, as "Stoneledge alleged in the [Underlying Action] that Thoennes was a principal in IMK, which is a limited liability company," and "IMK is not an insured" under the policies "because it is a limited liability company not listed in the declarations" (*Id.* at 15-16); and (c) "[r]epairs for defective construction are not covered" (*Id.* at 16-18). Moreover, CIC asserts that "[t]he set-off should be calculated on a proportional basis by dividing the damages attributable to Marick by Stoneledge's total damages for each phase." (*Id.* at 28.)

On April 28, 2017, Builders Mutual filed a Motion for Summary Judgment,

contending, *inter alia*, that the judgments against Marick "are for damage to Marick's work and are therefore excluded" pursuant to the "your work" exclusion. (ECF No. 67-1 at 8-9.)[2]

In response to CIC's arguments, Plaintiff contends that even if certain damages are not covered under the policies, "any attempt to allocate the jury's Phase I verdict or the Phase II stipulation of damages between covered and uncovered damages is improper and purely speculative." (ECF No. 91 at 1.) Plaintiff also contends CIC "failed to properly reserve the right to contest coverage": (a) "as to damages that it argues constitute faulty workmanship;" (b) "on the basis of a 'known loss' exclusion;" (c) and "on the basis that breach of warranty claims are not covered." (*Id.* at 1-2.) Moreover, Plaintiff argues that CIC's insured "was not aware of the property damage at the inception of the three-year policy dated April 2009" and that "[d]amages for breach of the implied warranty of workmanlike service are covered under the insuring agreement and are not excluded." (*Id.* at 2.)

As to Builders Mutual's argument that the exclusion for "your work" excludes coverage, Plaintiff argues the exclusion does not apply "because the resulting damage is to another contractor's work." (ECF No. 90 at 2.) Plaintiff argues that "the Phase I trial testimony includes evidence that the property damage was damage to the work of

---

[2] Builders Mutual also argued that its policies "only apply to 'property damage' that occurred during the policy period," and its last policy expired on October 20, 2007. (ECF No. 67-1 at 9.) Builders Mutual asserted that, in the event its Motion for Summary Judgment was denied, it "requests partial summary judgment and a declaration that its coverage is limited to its time on the risk." (*Id.* at 10.) Builders further joined in the following arguments made by CIC:

      IV. The breach of warranty cause of action is not covered under the insuring agreement.
      V. The breach of fiduciary duty cause of action is not covered.
      VI. Repairs for defective construction are not covered.
      VII. Applicability of the set-off.

(ECF No. 67-1 at 10.)

Bostic Brothers Construction, the first Phase I contractor." (*Id.*) Plaintiff argues the "same rationale that prohibits an insurer from attacking a general jury verdict or attempting to argue coverage after not properly reserving its rights, precludes a post-agreement effort to allocate the $2,000,000.00 Phase II stipulation among covered and uncovered claims." (*Id.* at 4.)

### (2) Plaintiff's Motion for Summary Judgment (ECF No. 81)

Plaintiff asserts that neither CIC nor Builders Mutual "advised Marick of the ramifications of a general verdict on the issue of coverage and neither explained the potential conflict of interest between the insured and the carriers on that issue (the potential consequences of an unallocated verdict)." (ECF No. 81-1 at 11.) Pointing to CIC and Builders Mutual's responses to Requests to Admit, Plaintiff asserts that the insurance companies "did not request an allocation of the verdict between covered and uncovered damages or request special interrogatories for that purpose." (*Id.*; *see also* ECF No. 81-21 at 2; ECF No. 81-22 at 2.)[3] Plaintiff states, *inter alia*,

> [the insurance companies] did not disclose the conflict of interest that resulted or disclose that the Insureds would be expected to prove the amount of covered damages from the verdict in a separate action in federal court.
> However, without explaining the ramifications on coverage, defense counsel, hired by the Insurance Companies, did prepare and agree to a verdict form which allowed for damages to be divided between three causes of action, two of which they now argue are not covered. Without explaining the significance to Marick, defense counsel also demanded that

---

[3] Defendants admitted they did not request special interrogatories or a special verdict as to Phase I only; as to Phase II, they state, "Phase II was settled without a trial, but" CIC and Builders Mutual "reserved [their] right to establish any coverage defenses in this action." (ECF No. 81-21 at 2; ECF No. 81-22 at 2.) Plaintiffs also asked Defendants to admit that they "did not disclose to [their] Insureds [their] interest in attempting to allocate the verdict to one cause of action over the other," and Defendants denied this request, stating that they "informed Marick Home Builders, LLC that some or all of the damages in the underlying case may not be covered due to various coverage limitations and/or exclusions in its policies." (*Id.*)

the jury's verdict be apportioned among other defendants. As a result, the judgment against Marick for the negligence claim, clearly covered, was reduced to $857,635.29 while the verdicts against Marick for breach of implied warranty and the verdict against Thoennes for breach of fiduciary duty, remained at $2,144.088.23. The insurance companies are now asserting that the implied warranty and fiduciary duties claims are not covered.

(ECF No. 81-1 at 11.)

In contending it is entitled to summary judgment, Plaintiff summarizes its argument as follows:

> Based on the precisely applicable precedent, the Stoneledge HOA is entitled to a declaration of coverage and summary judgment in the full amount of the Phase I judgment plus post judgment interest. First, it would be "improper and purely speculative" to attempt to allocate Phase I jury's verdict between covered and non-covered damages. Accordingly, the full amount of damages that the jury awarded in the Underlying Action Phase I Trial plus post judgment interest is subject to the Insurance Companies' duty to indemnify. Moreover, the Insurance Company Defendants failed to properly reserve their rights or inform their insureds of potential conflict between them and have therefore waived their rights to contest any coverage issues. For the same reasons, the Stoneledge HOA is entitled to the full amount of the stipulated damages for Phase II.

(ECF No. 81-1 at 12.) Plaintiff cites *Harleysville Grp. Ins. v. Heritage Communities, Inc.*, No. 2013-001281, 2017 WL 105021, *7 n.11 (S.C. Jan. 11, 2017), *opinion superseded on reh'g*, 803 S.E.2d 288 (2017), and *Auto Owners Insurance Co. v. Newman*, 684 S.E.2d 541, 547 (2009), to support its argument that "[a]ny attempt to allocate the jury's verdict between covered and uncovered losses, when no attempt to do so was made in the Underlying Action, would be speculative, and if covered losses were submitted to the jury, then the Insurance Defendants must indemnify their insureds for the entire verdict." (ECF No. 81-1 at 15.) Plaintiff contends that "[w]hile *Harleysville* was a firm restatement of South Carolina law with respect to insurers['] ability to speculate

following a general verdict, it significantly defined South Carolina law in another respect," in affirming the ruling that the insurance company was precluded from contesting coverage in a declaratory judgment action where it "failed to properly reserve the right to contest coverage." (*Id.* at 19-20.)

Plaintiff further argues that "[t]he same rational[e] that prohibits an insurer from attacking a general jury verdict or attempting to argue coverage after not properly preserving its rights[] precludes a post-agreement effort to allocate the . . . Phase II stipulation among covered and uncovered claims." (*Id.* at 22.)

In opposing Plaintiff's motion, Defendants contend that the decision in *Harleysville* did not address the following policy provision in their policies:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

(*See* ECF No. 78 at 39 as to Builders Mutual; ECF No. 82-9 at 2 as to CIC.) Citing to the now superseded opinion in *Harleysville*, Defendants assert that the policies at issue in that case did not contain this language.[4] Defendants argue that because Plaintiff is not a named insured, it "lacks standing to make changes to the policies," and the "terms of the policies can only be amended or waived by endorsement issued by Defendant insurers and made part of the policies." (ECF No. 89 at 7.)

Defendants also assert that Plaintiff failed to plead waiver and estoppel, that coverage cannot be created by waiver or estoppel, and that Plaintiff cannot prove

---

[4] At the hearing before Judge Baker, counsel for Defendants stated his position was that he did not know whether the policies at issue in *Harleysville* contained this language.

waiver or estoppel. (*Id.* at 7-10.) Defendants contend their reservation of rights letters complied with the applicable law (and so the factual basis for a finding of waiver in *Harleysville* does not exist in this case) and that *Harleysville* is distinguishable "because it fails to address prior law governing adequacy of reservation of rights letters." (*Id.* at 10-11.) Defendants assert that *Harleysville* is also distinguishable in that the insurance company's legal counsel attended the trial of the underlying action and discussed the progress of the case with the trial counsel employed to represent the insureds. (*Id.* at 12.) They contend *Harleysville* should be given prospective effect only. (*Id.* at 13.)

Defendants also argue that "[e]ven if [their] reservation of rights letters are reviewed under the more stringent <u>Harleysville</u> standard, they are substantially compliant." (*Id.* at 14.) Defendants assert their reservation of rights letters "specified the grounds upon which coverage was contested and discussed their applicable coverage positions." (*Id.* at 15.) Defendants contend "[t]he requirement that reservation of rights letters must advise of the insurer's intent to file a declaratory judgment action is not relevant in this case," because Plaintiff filed the declaratory judgment action. (*Id.* at 16.) As to the "[w]arning of possible conflicts of interest," Defendants assert "[t]he requirement that an insurer warn of possible conflicts of interest in its reservation of rights letter is inconsistent with current South Carolina law." (*Id.*) As to the "[a]llocated verdict requirement," Defendants assert that "[a] holding that Defendants waived all rights under their contracts of insurance merely by failing to warn of things that were inconsistent with South Carolina law at the time would be manifestly unjust." (*Id.* at 17.)

Defendants also cite to footnote eleven of the now-superseded opinion in *Harleysville*, asserting they "did not waive their right to seek an allocation between

18

covered and non-covered damages." (*Id.* at 18.)[5] Defendants contend *Auto Owners Insurance Co. v. Newman*, 684 S.E.2d 541 (2009), is not applicable because Defendants did not represent Marick in the underlying case; Defendants also argue *Newman* is distinguishable because Defendants have presented evidence sufficient to allow an allocation between covered and non-covered damages. (ECF No. 89 at 20-24.) Defendants state that they seek "an allocation" between covered and non-covered

---

[5] In the now-superseded opinion, footnote eleven stated as follows:

> Moreover, even were we to conclude there was no evidence to sustain this finding, the ultimate disposition of the coverage question would nevertheless remain unchanged. In addition to finding Harleysville's attempted reservation of rights to be insufficient, the Special Referee also found "the Court has no basis upon which to make a logical assessment of the jury's purpose when it awarded the general verdict" as to the negligent construction, breach of warranty, and breach of fiduciary duty claims, and the Special Referee refused to "engage in unguided speculation with respect to this issue of [allocating losses], particularly when the dilemma now confronting Harleysville is of its own making." Indeed, Harleysville cannot overcome the law in South Carolina concerning general verdicts. *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 561-62, 614 S.E.2d 611, 614-15 (2005) (affirming trial court's holding in a declaratory judgment action that insurer had a duty under the CGL policy to indemnify insured for the entire general verdict where at least one of several claims was covered and explaining that when a jury returns a general verdict, a finding of coverage as to any of the claims submitted to that jury "answers the coverage question" as to the entire general verdict); *see also Newman*, 385 S.C. at 198, 684 S.E.2d at 547 (finding that even though arbitrator's award improperly included amounts for replacing and repairing faulty workmanship itself, there was insufficient evidence in the record to allow the Court to determine which costs were solely attributable to the non-covered faulty workmanship and finding that the insurer's duty to indemnify therefore covered the entire award). The dissent ignores the Special Referee's finding in this regard, which serves as an alternative and independent basis upon which we affirm.

(*See* ECF No. 81-24 at 21 n.11 (modifications in original).) After rehearing, footnote eleven was revised and now provides as follows:

> In addition to finding Harleysville's attempted reservation of rights to be insufficient, the Special Referee also found "the Court has no basis upon which to make a logical assessment of the jury's purpose when it awarded the general verdict" as to the negligent construction, breach of warranty, and breach of fiduciary duty claims, and the Special Referee refused to "engage in unguided speculation with respect to this issue of [allocating losses], particularly when the dilemma now confronting Harleysville is of its own making." *See Newman*, 385 S.C. at 198, 684 S.E.2d at 547 (finding that even though arbitrator's award improperly included amounts for replacing and repairing faulty workmanship itself, there was insufficient evidence in the record to allow the Court to determine which costs were solely attributable to the non-covered faulty workmanship and finding that the insurer's duty to indemnify therefore covered the entire award).

*Harleysville Grp. Ins. v. Heritage Communities, Inc.*, 803 S.E.2d 288, 301 (S.C. 2017) (modifications in original).

damages in this separate declaratory judgment action, "which is permitted under South Carolina law." (*Id.* at 27.) Citing, *inter alia*, the Restatement (Second) of Judgments, Defendants assert that they are not precluded from litigating coverage issues in a separate proceeding. (*Id.* at 27-31.)

As to Phase II, Defendants assert Plaintiff "agreed to litigate the amount of 'covered damages' in this declaratory judgment action." (*Id.* at 32.) Defendants also contend Plaintiff "is not entitled to an inference that the entire set-off was for non-covered damages." (*Id.*) Finally, Defendants argue that CIC's reservation of rights letter "was not untimely." (*Id.* at 33-34.)

## C. The July 2017 Decision in *Harleysville*

*Harleysville* involved declaratory judgment actions to determine coverage under Commercial General Liability ("CGL") policies issued by Harleysville Group Insurance. *See Harleysville Group Insurance v. Heritage Communities, Inc.*, 803 S.E.2d 288 (2017). After general verdicts were issued against its insureds, Harleysville filed declaratory judgment actions "to determine what portion of the judgments in the underlying construction-defect lawsuits would be covered under Heritage's CGL policies." *Id.* at 294. Harleysville argued it had "no duty to indemnify Heritage for these judgments." *Id.* However, "if any of these damages were found to be covered, Harleysville sought an accounting to somehow parse the jury verdicts and determine which portion of the juries' general verdicts constituted covered damages" and further argued "it could be responsible for only that portion of damages occurring during the period of time its policies provided coverage." *Id.*

The matter was referred to a Special Referee, and the court in *Harleysville* noted

the Special Referee's findings as follows:

> Ultimately, the Special Referee found coverage under the policies was triggered because the juries' general verdicts included some covered damages. Although the Special Referee found that the costs to remove and replace the faulty workmanship were not covered under the policies, the Special Referee concluded that it would be improper and purely speculative to attempt to allocate the juries' general verdicts between covered and non-covered damages. Accordingly, the Special Referee ordered the full amount of the actual damages in the construction-defect suits would be subject to Harleysville's duty to indemnify in proportion with its time on the risk. The Special Referee made factual findings regarding the dates of the progressive damages period and the period during which Harleysville provided coverage. The Special Referee thereafter calculated Harleysville's pro rata portion of the progressive damages based on Harleysville's time on the risk. Lastly, the Special Referee found punitive damages were covered and that no policy exclusion applied to preclude coverage for any portion of those damages.

*Id.*

The Supreme Court of South Carolina first addressed Harleysville's contention that the Special Referee "erred in finding it failed to properly reserve the right to contest coverage." *Id.* at 296. The question was "whether a reservation of rights letter that merely provides the insured with a copy of the policy, coupled with a general statement that the insurer reserves all of its rights, is sufficient," and the court held that "it is not." *Id.* The court stated that "it is axiomatic that an insured must be provided sufficient information to understand the reasons the insurer believes the policy may not provide coverage." *Id.* at 297. The court agreed with the Special Referee "that generic denials of coverage coupled with furnishing the insured with a copy of all or most of the policy provisions (through a cut-and-paste method) is not sufficient." *Id.* The letters at issue in *Harleysville* were described as follows:

> The[] letters explained that Harleysville would provide a defense in the underlying suits and listed the name and contact information for the

defense attorney Harleysville had selected to represent Heritage in each matter. These letters identify the particular insured entity and lawsuit at issue, summarize the allegations in the complaint, and identify the policy numbers and policy periods for policies that potentially provided coverage. Additionally, each of these letters (through a cut-and-paste approach) incorporated a nine- or ten-page excerpt of various policy terms, including the provisions relating to the insuring agreement, Harleysville's duty to defend, and numerous policy exclusions and definitions. Despite these policy references, the letters included no discussion of Harleysville's position as to the various provisions or explanation of its reasons for potentially denying coverage. With the exception of the claim for punitive damages, the letters failed to specify the particular grounds upon which Harleysville did, or might thereafter, dispute coverage.

*Id.* at 298-99.[6] The Supreme Court of South Carolina noted the "stark contrast" between the "specific grounds for contesting coverage for punitive damages" and the "non-specific-'we will let you know later'-purported reservation of rights." *Id.* at 299. The court stated, "It is reasonable to conclude that Harleysville knew precisely how to protect its interests, but elected to be purposefully vague on all coverage matters except punitive damages." *Id.*

The *Harleysville* court found it "[s]ignificant[]" that "none of the reservation letters advised Heritage of the need for allocation of damages between covered and non-covered losses or referenced a possible conflict of interest or Harleysville's intent to pursue a declaratory judgment action following any adverse jury verdicts in the underlying lawsuits." *Id.* The court stated, *inter alia*,

"The right to control the litigation carries with it certain duties," including

---

[6]As to punitive damages, the letters stated,

The complaint filed against you seeks punitive damages. [Harleysville] reserves the right to disclaim coverage for these since under all of your policies, they would not arise from an "occurrence," do not fit the definition of "bodily injury" or "property damage," and/or were "expected and intended" within the meaning of exclusions in the policies.

*Harleysville*, 803 S.E.2d at 299 (modifications in original).

"the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages." *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1498 (10th Cir. 1994) (citations omitted) (explaining "[i]f the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories" (citing *Duke v. Hoch*, 468 F.2d 973, 979 (5th Cir. 1972))). Therefore, by "virtue of its duty to defend, an insurer gains the advantage of exclusive control over the litigation," and "it would be unreasonable to permit the insurer to not disclose potential bases for denying coverage." *Id.* (internal citations and quotation marks omitted); *see Desert Ridge Resort*, 141 F.Supp.3d. at 966-68 (explaining that where an insurer undertakes and exclusively controls the defense of the insured under a reservation of rights, prior to undertaking the defense, the insurer must specify in detail any and all bases upon which it might contest coverage in the future since "[g]rounds not identified in the reservation of rights may not be asserted later by the insurer"); *id.* (explaining the existence of a potential conflict of interest between insured and insurer is what requires the insured to set forth the bases upon which it might contend damages are not covered in a greater amount of detail than would otherwise be required); *Weber v. Biddle*, 4 Wash. App. 519, 483 P.2d 155, 159 (1971) (underscoring that when an insurer controls the defense of the action against its insured, "a high fiduciary duty [i]s owed by the insurer to the insured" and observing a "general notice of reservation of rights failing to refer specifically to the policy provision upon which the insurer wished to rely may be insufficient").

The Special Referee thoroughly analyzed the letters to determine whether Harleysville properly reserved its rights. As to the substance of Harleysville's letters to Heritage, the Special Referee found the letters were not sufficiently specific to put Heritage on notice of Harleysville's specific defenses, particularly as to the need for an allocated verdict.

Perhaps in recognition of the inadequacy of the letters, Harleysville additionally relied on an oral reservation of rights based on conversations with representatives of Heritage. The Special Referee considered this argument (and the evidence advanced by Harleysville) and concluded that even if an oral reservation is permitted in South Carolina, the oral reservations Harleysville claimed to have communicated to the principals of the defunct Heritage entities "fall short of the specificity [required] and are ambiguous at best," noting "[p]roviding timely and specific policy defenses and disclosing actual or potential conflicts are important fiduciary duties of the insurer[,] especially when, as here, Harleysville is controlling the defense of its insured." The Special Referee concluded that

Harleysville failed to properly reserve its rights to dispute coverage as to actual damages and, thus, Harleysville was precluded from attempting to do so in this action.

Here, except as to punitive damages, Harleysville's reservation letters gave no express reservation or other indication that it disputed coverage for any specific portion or type of damages. Nor did the letters or testimony indicate that, in the event Heritage was found liable in the construction-defect suits, Harleysville intended to file the instant lawsuit to contest various coverage issues. Specifically, Harleysville did not expressly put its insureds on notice that it intended to litigate the issues of whether any damages resulted from acts meeting the definition of occurrence, whether any damages occurred during the applicable policy periods, and what damages were attributable to non-covered faulty workmanship. And in no way did the letters inform the insureds that a conflict of interest may have existed or that they should protect their interests by requesting an appropriate verdict. As the Fifth Circuit found in *Duke v. Hoch*, Harleysville's reservation "was no more than a general warning" and "too imprecise to shield [the insurer]." 468 F.2d 973, 979 (5th Cir. 1972). We find there is evidence in the record to support the Special Referee's finding that Harleysville's reservation letters were insufficient to reserve its right to contest coverage of actual damages, and, therefore, we affirm. Because we find Harleysville did not effectively reserve the right to contest coverage, we need not address Harleysville's claims of error regarding various policy exclusions.

*Harleysville*, 803 S.E.2d at 299-301.

## D. Defendants' Reservation of Rights Letters

On May 4, 2009, Builders Mutual sent a letter to Marick, indicating that Builders

Mutual had received notice of a claim; the letter stated, *inter alia*,

As we feel there may be coverage issues involved, please be advised that we are conducting our investigation of this matter under a full reservation of all our rights under our policy contract.

Please refer to the Commercial General Liability Coverage Form (CG 00 01 1001), within that policy please refer to number 2, Exclusions J through M. "Damage to Property." This states "property damage" to "your work" arising out of it or any part of it is excluded. We should also point out the exclusion attached to your policy CG 22 94 10 01, titled, EXCLUSION-DAMAGE TO WORK PERFORMED BY SUBCONTRACTOR ON YOUR BEHALF, which excludes all work performed by subcontractors and

BCG0015 0102 title, FUNGUS, MOLD AND MILDEW EXCLUSION.

(ECF No. 81-6.) On July 13, 2009, Builders Mutual sent another letter to Marick, acknowledging it had received the complaint filed in the Oconee County Court of Common Pleas against Marick. (ECF No. 81-7.) That letter stated, *inter alia*,

> Our review of the complaint alongside your Commercial General Liability Coverage Form finds coverage issues. Please be advised that your work product is not covered. Please refer to exclusions j. k. l. and m. for Policy language. Your policy also contains endorsement CG2294, which modifies exclusion 1. to exclude the work of subcontractors. The policy also has endorsement BCG0015, which excludes from coverage bodily injury or property damage arising out of fungus, mold or mildew.

> With a full reservation of all our rights under the policy contract, we have referred the lawsuit to our attorney, Robert Davis with the Ward Law Firm, . . . with the instructions he appear, answer and defend Marick Home Builders, LLC.

> Because of the coverage issues involved, you may wish to associate your personal attorney, at your expense, with Attorney Davis.

(*Id.*)

CIC sent a letter to Marick on March 9, 2010, stating that the letter supplemented previous "conversations" regarding the HOA's claim. (ECF No. 81-5.) CIC stated, *inter alia*,

> Although CIC will provide a defense, it does so reserving all rights under the policy which may limit or eliminate coverage and CIC reserves the right to withdraw its defense if it should become apparent that there is no coverage. An explanation of the coverage issues follows.

> The purpose of this letter is to let you know there are certain issues regarding coverage and the CIC policy may not cover all of the claims which are asserted in this claim. CIC reserves its right to assert all coverage defenses and will not pay those claims which are not covered by the policy.

> . . .

> The referenced CIC Policy ("Policy"), number CPP 3649524, was in effect between 4/1/08 and 4/1/10. This includes General Liability coverage found on Form GA 101 (12/04). The Policy contains an EIFS exclusion (GA 369 11 02) and a Fungi or Bacteria exclusion (GA 382 03/02) and coverage may be limited by several other exclusions and endorsements.

(ECF No. 81-5 at 1-2 of 6.) CIC's letter states that "[i]t is doubtful that the claim alleges the happening of an 'occurrence,'" and "[i]f it should be determined there was no 'occurrence' within the property definition, there is no coverage." (*Id.* at 2.) The letter further indicates CIC's position that "[i]t is doubtful that the claim alleges 'property damage' within the policy definition and for this reason, there may be no coverage or coverage is limited." (*Id.*) CIC's letter also stated,

> Even if there is coverage, certain policy exclusions may apply to reduce or eliminate coverage. We do not yet have enough information to determine which exclusions may apply, but reserve the right to assert any exclusion which may apply as the facts of the claim are developed.

(*Id.*) The letter then quoted numerous exclusions, including: (a) Exclusion a. ("Expected or Intended Injury"); (b) Exclusion b. ("Contractual Liability"); (c) Exclusion j. ("Damage to Property"); (d) Exclusion k. ("Damage to Your Product"); (e) Exclusion i. ("Damage to Your Work"); (f) Exclusion m. ("Damage to Impaired Property or Property Not Physically Injured"); and (g) Exclusion n. ("Recall of Products, Work or Impaired Property"). (*Id.* at 2-4.) The letter further stated,

> Although coverage is limited, Cincinnati Insurance Company will defend the claim unless it becomes apparent that the policy provides no coverage. CIC reserves all rights under the policy, whether known or unknown and whether or not mentioned in this letter. Mr. Jason Imhoff with the Ward Law Firm has and will continue actively defending you in this matter.

(*Id.* at 5.)

**E. Analysis**

Builders Mutual issued the following policies that are relevant in the case *sub judice*: (a) Policy CPP 0013918 01, issued to Rick Thoennes Builders and/or Marick Home Builders LLC for the policy period January 30, 2004 to January 30, 2005 (ECF No. 50-2 at 2); (b) Policy CPP 0013918 02, issued to Rick Thoennes Builders and/or Marick Home Builders LLC for the policy period January 30, 2005 to January 30, 2006 (ECF No. 50-3 at 2); (c) Policy CPP 0022751 00, issued to Marick Home Builders, LLC, Rick Thoennes, and Rick Thoennes, Jr. for the policy period October 20, 2005 to October 20, 2006 (ECF No. 50-4 at 4); and (d) Policy CPP 0022751 01, issued to Marick Home Builders, LLC, Rick Thoennes, and Rick Thoennes, Jr. for the policy period October 20, 2006 to October 20, 2007 (ECF No. 50-5 at 2). CIC issued Policy CPP 364 95 24 to Marick Home Builders LLC and Rick Thoennes Builders for the policy period April 1, 2008 to April 1, 2009 (*see* ECF No. 81-15 at 1); this policy was renewed for the policy period from April 1, 2009 to April 1, 2012, (*see* ECF No. 81-16 at 1).

The judgments at issue in the instant action are judgments in *Stoneledge At Lake Keowee Owners' Association Inc. v. IMK Development Company, LLC*, Case No. 2009-CP-37-0652. In that Underlying Action in the Oconee County Court of Common Pleas, the jury awarded Plaintiff $3,000,000 on its negligence claim (against Bostic Brothers Construction, Inc. ("Bostic"); IMK; and Marick); $1,000,000 on its claim for breach of warranty of workmanlike service (against Bostic and Marick); and $1,000,000 on its claim for breach of fiduciary duty (against IMK; Integrys Keowee Development, LLC; Rick Thoennes; William C. Cox; and Larry D. Lollis). (ECF No. 82-22.) The state court ultimately entered judgment as follows:

(a) As to the Plaintiff's claim for negligence against Marick and IMK, the state court entered judgment in favor of Plaintiff in the amount of $857,635.29;[7]

(b) As to the Plaintiff's claim for breach of warranty against Marick, the state court entered judgment in favor of Plaintiff in the amount of $2,144,088.23;[8]

(c) As to Plaintiff's claim for breach of fiduciary duty against IMK and Rick Thoennes, the state court entered judgment in favor of Plaintiff in the amount of $2,144,088.23.[9]

(*See* ECF No. 82-4.)

## The Exclusion for "Your Work"

Builders Mutual argues that, as to Phase I, "coverage does not exist for the judgments against Marick for Phase I because they are based upon damages awarded for damage to Marick's work." (ECF No. 67-1 at 8-9.) The "your work" exclusion provides as follows:

This insurance does not apply to:
**1. Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(ECF No. 78 at 25.)[10] Plaintiff contends the exclusion does not prevent coverage because "the Phase I trial testimony includes evidence that the property damage was damage to the work of Bostic Brothers Construction, the first Phase I contractor." (ECF

---

[7] As to Plaintiff's negligence claim against Bostic, the court entered judgment of $2,144,088.23 in favor of Plaintiff. (ECF No. 82-4 at 1.)

[8] As to Plaintiff's breach of warranty claim against Bostic Brothers Construction, Inc., the court entered judgment of $643,226.47 in favor of Plaintiff. (ECF No. 82-4 at 2.)

[9] As to Plaintiff's breach of fiduciary duty claim against Integrys Keowee Development, LLC; William C. Cox; and Larry D. Lollis, the court entered judgment of $2,144,088.23 in favor of Plaintiff. (ECF No. 82-4 at 2.)

[10] "Products-completed operations hazard" is defined in the policy. (*See* ECF No. 78 at 23.)

No. 90 at 2.)[11]

The undersigned is not persuaded that Builders Mutual is entitled to summary judgment pursuant to the "your work" exclusion. Builders Mutual's policies define the term "your work":

> "Your work":
>     a. Means:
>         (1) Work or operations performed by you or on your behalf; and
>         (2) Materials, parts or equipment furnished in connection with such work or operations.
>     b. Includes
>         (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
>         (2) The providing of or failure to provide warnings or instructions.

(ECF No. 78 at 24 of 46.)

During the trial in the Underlying Action, Nathan Hornaday, an employee of Marick, testified that when he arrived as superintendent at the Stoneledge development in 2005, "mainly everything was finished except for . . . two or three units." He testified that in those few units, the exterior was done, though they did not have sheetrock inside them. (Trial Tr., ECF No. 90-1 at 2, 5.) He further testified that his job with respect to Phase I was to inspect all of the units, which had been previously constructed by Bostic, for damages to determine what needed to be repaired. (*Id.* at 6.) Moreover, he testified it was Marick's intention to fix the problems Hornaday found with respect to the Phase I units. (*Id.*) As to Phase I, when Marick arrived, the roof and siding on all thirty-seven buildings were completed. (*Id.* at 9-10.)

---

[11] Plaintiff also argues that the insurance companies did not sufficiently reserve their right to contest coverage as to the exclusion for "your work." Builders Mutual's reservation of rights ("ROR") letter stated, *inter alia*, "Please be advised that your work product is not covered." (ECF No. 81-7.) However, whether this ROR letter is sufficient as to Phase I is not outcome determinative, because there is evidence that work performed by Bostic was damaged.

Derek Hodgin testified at the underlying trial that Marick obtained permits to complete work on Phase I, and "in pulling the permits for the units that it did in phase one, [Marick] was obligated to comply with the building code in the performance of its work." (*Id.* at 16-17.) He further testified that once Marick was on notice of some water damage in the area of the balconies, Marick called a waterproofing contractor, who "simply put a waterproof coating on the top of the concrete surface." (*Id.* at 19.) Hodgin testified that such repair was not adequate as a long-term repair but was more of "a band-aid type repair." (*Id.* at 20.) Moreover, he testified that the application of this waterproofing membrane did not "address the root cause of the leaking problems"; it would "slow it down" but not "eliminate the problem." (*Id.*) He opined that Marick's "effort to address the water infiltration at the foundation walls" was "a breach of the applicable standards of care that Marick owed at that time." (*Id.* at 23.) Hodgin further testified that the water damage occurred over time, such that damage occurred each time it rained. (*Id.* at 24-25.)

Builders Mutual seems to be arguing that because Marick was held legally responsible for Plaintiff's damages as to Phase I—then, *a fortiori*, the damage had to be to Marick's work (and thereby excluded from coverage via the "your work" exclusion). But the trial record reveals otherwise. The fact that Marick completed construction of Phase I does not automatically mean any damage that occurred to those units fell within the definition of "your work." *See Jessco, Inc. v. Builders Mut. Ins. Co.*, 472 F. App'x 225, 229-30 (4th Cir. 2012) (rejecting argument that "all of the work on the property was done by subcontractors" on behalf of Jessco, the insured homebuilder, and "that the your-work exclusion therefore bars coverage for all of the claims asserted by the

Mazycks," concluding that "the Mazycks' claims against Jessco created a possibility that a third-party's work or property was damaged by the faulty workmanship of Jessco or its subcontractors" where, *inter alia*, "[t]he lot-flooding claim first asserted by the Mazycks . . . created a possibility of damage to the landscaping, which was Glenn Mazyck's work, not Jessco's"); *see also Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 365 (4th Cir. 2005) (concluding, in applying Pennsylvania law, that the costs of replacing concrete and repairing damaged landscaping, neither of which were performed by the insured or on behalf of the insured, were not excluded from coverage by the "your work" exclusion, stating, "Since the landscaping and concrete work were performed by third parties, the 'your work' exclusion does not preclude coverage for the costs of repairing and replacing the landscaping and concrete"); *NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*, Civ. A. No. 2:11-1016-RMG, 2012 WL 13005316, at *5 (D.S.C. Oct. 31, 2012) (holding the "your work" exclusion was inapplicable, stating, "[T]his exclusion applies only to damage to an insured's work, however, this case concerns damage to third parties' work caused by moisture intrusion"); *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 226-27 (5th Cir. 2009) (concluding that, although the "your work" exclusion "precludes coverage for the cost of repairing [the insured's] own work, the foundation," "[t]he 'your work' exclusion does not preclude coverage for damage to the parts of the house [the insured did not work on] resulting from the allegedly faulty foundation"). *Cf. Newman*, 684 S.E.2d at 544-45 (concluding that "continuous moisture intrusion" causing damage to property other than the insured's work constitutes an occurrence). Here, there is evidence of property damage to work performed by Bostic, before Marick was even engaged in working on Phase I;

accordingly, Builders Mutual is not entitled to summary judgment as to the "your work" exclusion.

The Policy Periods[12]

In its Motion for Partial Summary Judgment, CIC argues that its 2010-11 and 2011-12 policies do not provide coverage for the at-issue loss "because they took effect after the underlying lawsuit was commenced." (ECF No. 80-1 at 10-11.) CIC further argues that its 2009-10 policy does not provide coverage, as Marick and Thoennes "were on notice of [the underlying plaintiff's] claim even before" the coverage term went into effect, and the Stoneledge HOA "was aware of significant construction defects as early as January 31, 2009." (*Id.* at 11.)

CIC issued policies that covered the following time period: April 1, 2008 to April 1, 2012. (ECF No. 82-9 at 1; ECF No. 82-10 at 1.) In arguing these policies do not provide coverage for the at-issue loss, CIC points specifically to endorsement GA 101 12 04. (ECF No. 82-9 at 15; ECF No. 82-10 at 61.) This endorsement provides, *inter alia*,

> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
> (3) Prior to the "coverage term" in which the "bodily injury" or "property damage" occurs, you did not know, per Paragraph 1.d below, that the

---

[12] Builders Mutual issued policies that covered the time period from January 30, 2004 to October 20, 2007. (*See* ECF No. 50-2 at 2; ECF No. 50-3 at 2; ECF No. 50-4 at 4; ECF No. 50-5 at 2.) In its Motion for Summary Judgment, Builders Mutual argues that its policies "only apply to 'property damage' that occurred during the policy period," and its last policy expired on October 20, 2007. (ECF No. 67-1 at 9.) To the extent its Motion for Summary Judgment is denied, Builders Mutual "requests partial summary judgment and a declaration that its coverage is limited to its time on the risk." (*Id.* at 10.) Moreover, Builders Mutual states that it "reserves the questions of the percentage of damages to be allocated to [its] time on risk and the amount of damages to be allocated to [it] for further determination." (*Id.*)

"bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

. . .

d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

(3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that "bodily injury" or "property damage" had occurred or had begun to occur; or**

**(5) Becomes aware, or reasonably should have become aware, of a property damage from which "bodily injury" or "property damage" is substantially certain to occur.**

(*Id.* (emphasis added).) "Authorized representative" is defined to mean:

a. If you are designated in the Declarations as:

. . .

(2) A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

(3) A limited liability company, your members and your managers are "authorized representatives".

(4) An organization other than a partnership, joint venture, or limited liability company, your "executive officers" and directors are "authorized representatives." Provided you are not a publicly traded organization, your stockholders are also "authorized representatives."

. . .

b. Your "employees":

(1) Assigned to manage your insurance program; or

(2) Responsible for giving or receiving notice of an "occurrence," "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives."

(ECF No. 82-9 at 30; ECF No. 82-10 at 76.)[13]

CIC also contends that its 2009-10 policy does not provide coverage, as "Dr.

---

[13] CIC's named insureds are "Marick Home Builders LLC and Rick Thoennes Builders." (ECF No. 82-9 at 1; ECF No. 82-10 at 1.)

Hund met with Thoennes and another representative of Marick, Tim Roberson, to discuss the water damage to Hund's unit in February 2009." (*Id.* at 11.) CIC asserts that "Dr. Hund discussed the problems with his unit with Marick informally in late 2008 or early 2009." (*Id.*) The 2009 policy took effect on April 1, 2009. (*See* ECF No. 82-10 at 1.)

As to the 2009-10 policy, the question is whether Marick or Thoennes knew, prior to April 1, 2009, that the "'property damage' had occurred or had begun to occur, in whole or in part." In asserting Marick was on notice of the claim in 2008, CIC presents the notes of Gary Douty, an employee of CIC. (*See* ECF No. 82-18; *see also* Douty Dep., ECF No. 81-19.) Douty's notes of November 19, 2009 state, *inter alia*,

> According to Atty Lyles, the first that he is aware of Marick knowing about this problem was this past spring when he got involved. He said that Dr. Hund had some informal discussions with Marick Homes probably six months earlier. He really does not know if Hund had any earlier conversations before then or when he was actually made aware of the problem.

(ECF No. 82-18.) Additionally, CIC points to the January 31, 2009 meeting minutes of the HOA's Board of Directors. (ECF No. 82-19.) Board member Steve Taylor reported on "contracting repairs," noting that "Contracting Decors has repaired all roof leaks that the board was aware of," but "[t]here are some units . . . which may need major repairs," as "[i]t has been determined that some of the walls do not have siding or Tyvek moisture barrier on them." (*Id.* at 1.) Steve Taylor also reported as to "Faulty Construction/Marick/ Rick Thoennes." (*Id.* at 2.) The notes indicate that "[t]he majority of the porch roofs are leaking in Phase II." (*Id.*) These notes further state,

> Steve [Taylor] spoke to Jim Logan about filing charges against Marick for faulty construction; however[,] Steve has heard that Marick is filing for

34

bankruptcy. Steve has asked Tim Roberson to talk to Rick [Thoennes] (because Rick corrected this problem in his own units), to see if Rick can assist in offering a solution or procedure that he went through to get his units fixed, because Steve doesn't believe he spent that much to fix his units. We are walking a fine line because for Rick to offer an idea is to admit there is a problem. Rick has agreed to meet with John, Bob, and Steve to show them what they did to fix the problem. . . . We will see if Rick comes through and is willing to help on the other side of things and give him a chance to do so. We will have a special meeting when the time comes to address this further.

(*Id.*)

There is certainly evidence before the Court that indicates Marick and/or Thoennes knew—prior to April 1, 2009—that "property damage" had occurred or had begun to occur, in whole or in part. But there is also evidence indicating that Marick and Thoennes did not learn that "property damage" had occurred or had begun to occur, in whole or in part, until after April 1, 2009. At his deposition, Thoennes, a principal of Marick, stated that he did not "remember seeing" the board meeting notes dated January 31, 2009, "ever." (Thoennes Dep., ECF No. 82-20 at 23.) Thoennes was also asked about an email, dated February 12, 2009, that references problems at Dr. Hund's unit. (ECF No. 82-17.) CIC points to the email as evidence that Marick and Thoennes were on notice of the at-issue damage. (ECF No. 80-1 at 11.) However, the February 12, 2009 email is addressed from Tim Roberson (who had an ownership interest in IMK, but not Marick (*see* ECF No. 82-20 at 8)) to Tim Roberson (*see* ECF No. 82-17), and while Thoennes testified at his deposition that he was aware of problems with Dr. Hund's unit, he stated he was not sure he was aware of them as of the date of the email. (*See* ECF No. 82-20 at 21-22.) Thoennes further testified that he and Roberson went to Hund's unit, but was not certain when, though he stated that he and Roberson

"met with [Hund] prior to any of the legal stuff coming up." (*Id.* at 22.)

While it is not entirely clear to which "legal stuff" Thoennes is referring, Attorney Lyles sent a letter, dated May 7, 2009, to Marick Home Builders, LLC, notifying Marick of severe rot and deterioration in Dr. Hund's unit and requesting Marick's CGL insurance information. (ECF No. 82-13.) Certainly Builders Mutual was aware of the claim at least a few days prior to that, because Builders Mutual sent a letter dated May 4, 2009 to Marick, stating that Builders Mutual had received notice of Dr. Hund's claim. (ECF No. 82-14.) Furthermore, while the January 2009 HOA Board meeting notes refer to "roof leaks," the notes also indicate that "Contracting Decors has repaired all the roof leaks that the board was aware of." (ECF No. 82-19 at 1.) The notes also refer to "faulty construction," but as explained in *Crossman Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589, 594 (S.C. 2011), "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' but the defective construction would not." On the evidence before the Court, the factfinder could reasonably conclude that Marick and Thoennes did not learn that "property damage" had occurred or had begun to occur, in whole or in part, until after April 1, 2009. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that in ruling on motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" (citation omitted)). Accordingly, CIC is not entitled to summary judgment as to the 2009-10 coverage year.[15]

The original complaint in the Underlying Action was filed on May 29, 2009; the

---

[15] As discussed below, however, Plaintiff is entitled to summary judgment as to the 2009-10 year.

action was originally filed by Paul W. Hund, III, M.D. ("Dr. Hund"), as a putative class action against IMK and Marick. (*See* ECF No. 82-12.) It is undisputed that—at least by May 4, 2009—Builders Mutual had received notice of the claim against Marick. (*See* ECF No. 82-14.) It is also undisputed that—by at least July 8, 2009, CIC had received notice of the claim. (*See* ECF No. 82-16.)

CIC's assertion that the 2010-11 and 2011-12 policies took effect after the Underlying Action commenced (*see* ECF No. 80-1 at 10-11) is factually correct. However, Plaintiff argues CIC waived the right to contend these coverage periods (as well as the 2009-10 coverage period) do not provide coverage, and the Court agrees. CIC's reservation of rights letter states, *inter alia*, "The referenced CIC Policy . . ., number CPP 3649524, was in effect between 4/1/08 and 4/1/10." (ECF No. 81-5 at 2.) This is the only statement in the reservation of rights letter that could be construed as a communication of CIC's intent to later contend coverage was limited because of the "known loss" limitations in the policy. (*See id.* at 1-6.) CIC gave its insured no express reservation that it disputed coverage for 2009-10, 2010-11, or 2011-12; it did not put the insured on notice that it intended to later litigate which policy periods applied, nor did it inform the insureds that a conflict of interest may have existed. On these facts, the undersigned concludes CIC waived the right to contest coverage via the "known loss" exclusions. *See Harleysville*, 803 S.E.2d at 300 (finding reservation of rights letters insufficient to contest coverage of actual damages where the letters "did not expressly put [the] insureds on notice that [the insurer] intended to litigate the issues of . . . whether any damages occurred during the applicable policy periods" and failed to "inform the insureds that a conflict of interest may have existed").

**Breach of Warranty and Repairs for Defective Construction**

Defendants contend that the judgment as to Plaintiff's breach of warranty claim is not covered by their policies.[16] Specifically, Defendants argue this claim is not covered, as it is "based upon contract," and "Stoneledge's claim that Marick and Thoennes breached an implied warranty by failing to replace or repair their defective work does not trigger coverage under the insuring agreement." (ECF No. 80-1 at 14-15; *see also* ECF No. 67-1 at 10 (stating that Builders Mutual incorporates portions of CIC's Memorandum in support of its Motion for Partial Summary Judgment).) In a separate, but related, argument, Defendants contend that "[r]epairs for defective construction are not covered." (ECF No. 80-1 at 16-18.)

In opposing Defendants' motions as to the breach of warranty claim, Plaintiff argues (a) Defendants waived the right to assert the breach of warranty claim as a coverage issue, because it was not mentioned in the reservation of rights letters; (b) "regardless of the cause of action, there was only one 'damage' submitted to the jury;" and (c) the "breach of implied warranty of workmanlike service is not a contract action as [Defendants] suggest[]." (ECF No. 91 at 9.) In opposing Defendants' motions as to the argument about defective construction, Plaintiff cites the recent *Harleysville* decision and asserts that "once a judgment has been reached, it is simply too speculative to attempt to determine how the jury would have allocated between covered and non-covered damages." (*Id.* at 14.) Plaintiff contends, "If covered claims were submitted to the jury then the insurance company that failed to intervene or request special

---

[16] In January of 2015, judgment of $2,144,088.23 was entered in favor of Plaintiff against Marick Home Builders, LLC, on Plaintiff's claim for breach of warranty. (ECF No. 82-4 at 2.)

interrogatories regarding covered damages must pay the full amount of the verdict." (ECF No. 91 at 14.)

Generally speaking, Defendants are correct in their contention that "the cost of repairing faulty workmanship is not covered under CGL policies but resulting property damage beyond the defective work product itself is covered." *Harleysville*, 803 S.E.2d at 296. However, the Court finds that Defendants did not effectively reserve the right to contest coverage as to the claim for breach of warranty and repairs for defective construction.

Builders Mutual's letter of May 4, 2009 indicated there "may be coverage issues involved," (ECF No. 81-6), and Builders Mutual's letter dated July 13, 2009 references "coverage issues" and indicates that Marick "may wish to associate [its] personal attorney, at [its] expense," with the attorney provided by Builders Mutual, (ECF No. 81-7). Additionally, Builders Mutual's July 13, 2009 letter advised Marick that Marick's "work product is not covered." (*Id.*) CIC's letter, dated March 9, 2010, states that the "purpose of the letter is to let you know there are certain issues regarding coverage and the CIC policy may not cover all of the claims which are asserted." (ECF No. 81-5.) CIC's letter quoted numerous exclusions but did not explain CIC's position as to those exclusions. (*Id.*)

As was the case in *Harleysville*, none of the reservation letters advised the insureds "of the need for allocation of damages between covered and non-covered losses or referenced a possible conflict of interest." *Harleysville*, 803 S.E.2d at 299. Additionally, as in *Harlesyville*, none of the instant letters "reference an intent to pursue a declaratory judgment action following any adverse jury verdicts in the underlying

lawsuit[]." *Id.* at 299. Like the insurance company in *Harleysville*, Defendants in the case *sub judice* "did not expressly put [their] insureds on notice that [they] intended to litigate the issue[] of . . . what damages were attributable to non-covered faulty workmanship[, a]nd in no way did the letters inform the insureds that a conflict of interest may have existed or that they should protect their interests by requesting an appropriate verdict." *Id.* at 300. Accordingly, the Court finds that Defendants did not effectively reserve the right to contest coverage as to the claim for breach of warranty and repairs for defective construction; to the extent they seek summary judgment as to those claims, Defendants' motions are denied.

### Breach of Fiduciary Duty Claim

In January of 2015, judgment of $2,144,088.23 was entered in favor of Plaintiff against IMK and Thoennes on Plaintiff's claim for breach of fiduciary duty (ECF No. 82-4 at 2), and Defendants assert this claim is not covered (ECF No. 80-1 at 15-16). In arguing for summary judgment as to the claim for breach of fiduciary duty, Defendants state, *inter alia*,

> Stoneledge alleged in the underlying case that Thoennes was a principal in IMK, which is a limited liability company. IMK is not an insured under Defendants' policies because it is a limited liability company not listed in the declarations. South Carolina law permits a breach of fiduciary duty cause of action against developers, but no such cause of action exists against contractors.
>
> Therefore, coverage does not exist for the breach of fiduciary duty cause of action against Thoennes because he is not an insured for purposes of his acts on behalf of entities other than Marick. The breach of fiduciary duty cause of action concerns his role as principal and/or agent of IMK, which is a limited liability company not listed on the declarations.

(*Id.* at 16.)

To the extent Defendants seek summary judgment by arguing that Thoennes

was not insured, the undersigned cannot agree—at least not on the record before the

Court. In the Underlying Action, Plaintiff alleged, *inter alia*,

> 8. The Defendant, IMK Development Co., LLC ("IMK"), upon information and belief, is a limited liability company . . . and, at all times relevant to this action, was engaged in the business of property development in Oconee County. IMK developed and put certain of the Stoneledge townhomes into the stream of commerce.
> . . .
> 18. Upon information and belief, Defendant Rick Thoennes, ("Thoennes") is or was a member, manager, owner and/or principal of IMK at the time of development and construction of the Project and authorized, participated in and/or directed the tortious or otherwise wrongful acts of IMK and is personally liable for the liabilities of IMK. Unless specifically stated otherwise, references to IMK and/or Developers when used herein are defined to include Thoennes.
> 19. Defendant Marick Home Builders, LLC ("Marick"), upon information and belief, is a limited liability company . . . and, at all times relevant to this action, was licensed as a South Carolina residential builder, and was engaged in the business of residential home building in Oconee County, South Carolina. Marick acted as the general contractor for certain of the townhomes at the Project. Marick, acting in concert with IMK, placed certain of the Stoneledge townhomes into the stream of commerce.
> . . .
> 22. Upon information and belief, Defendant Thoennes was a license holder, member, manager, owner, and/or principal of Marick at the time of the construction of the Project and authorized, participated in and/or directed the tortious or otherwise wrongful acts of Marick and is personally liable for the liabilities of Marick. Unless specifically stated otherwise, references to Marick and Contractors herein are defined to include Thoennes.
> . . .
> 49. The Plaintiffs are informed and believe that IMK was the alter ego of Defendant Marick . . . and/or Thoennes in that Marick . . . and/or Thoennes totally dominated and controlled IMK and IMK manifested no separate interest of its own and functioned solely to achieve the goals of Marick, M Group, Integrys, the principals of same, as well as . . . Thoennes.
> 50. Because IMK was the alter ego of Marick . . . and Thoennes, to recognize corporate distinction promotes wrong and injustice and would contravene the public policy of South Carolina.
> 51. Additionally or alternatively, IMK, Marick, M Group and/or Integrys are corporate relatives whose interests and activities are so

amalgamated as to blur the distinction between the entities. Because of this amalgamation of interests and activities, IMK, Marick, M Group and/or Integrys should be treated as one and the same and be held jointly liable on all theories of liability asserted herein, including Breach of the Implied Warranty of Habitability, Breach of the Implied Warranty of Workmanlike Service, Negligence, and Breach of Fiduciary Duty. Unless specifically stated otherwise, references to IMK, Marick, M Group, and/or Integrys when used herein, mean each and all of those entities.

. . .

61. "Developers," when used herein, shall refer to IMK, . . . Marick, . . . and Thoennes, both collectively and individually.

(ECF No. 68 at 6-18.) Plaintiff alleged its breach of fiduciary duty claim against "Developers." (*Id.* at 21-22.)

It appears that Thoennes is an insured under the policies, at least with respect to actions he took on behalf of Marick. (*See* ECF No. 78 at 18 (defining "who is an insured" as to Builders Mutual policies); ECF No. 81-15 at 25 (same as to CIC policies).) As stated above, Plaintiff alleged its breach of fiduciary duty claim against "Developers," which—according to the Third Amended Complaint—included IMK, Marick, and Thoennes. (*See* ECF No. 68 at 21-22.) Additionally, Plaintiff alleged in the Underlying Action that IMK was the "alter ego" of Marick, and that IMK and Marick should be considered "amalgamated." (*See generally id.*) The record does not contain a complete transcript of the underlying trial, and it is not clear to the undersigned what rulings, if any, were made at the trial regarding these "alter ego" and "amalgamation" theories. Although Defendants may ultimately prevail on this argument, they have not done so on the record currently before the Court. Accordingly, to the extent Defendants seek summary judgment as to Plaintiff's breach of fiduciary duty claim, the request is denied.

## Applicability of Set-Off

Defendants argue that "[t]he set-off should be calculated on a proportional basis

by dividing the damages attributable to Marick by Stoneledge's total damages for each phase." (ECF No. 80-1 at 26-28.) However, Defendants make various unverified assumptions about the manner in which other defendants in the Underlying Action resolved the claims against them "based upon the same repair estimates," for example: "Presumably, every liability insurer that contributed toward the settlement of the underlying case provided indemnification for covered damages. Therefore, the set-off should be applied against the total amount of covered damages proved by Stoneledge in this case." (*See id.* at 26.) Defendants assert that the proportional set-off they propose is necessary to prevent Plaintiff from reaping a double recovery. (*See id.* at 25-26.)

The Court is not at liberty to speculate about the covered or non-covered nature of the damages paid by other defendants or their insurance companies. Moreover, the record does not support the assertion that Plaintiff will reap a double recovery. The amount sought by Stoneledge in this case "is the net sum, *after set-off*, that it has either been awarded against [Defendants'] insureds [as to Phase I] or which was stipulated to by [Defendants] [as to Phase II]." (*See* ECF No. 91 at 15-16 (emphasis in original).) Accordingly, Defendants' motions for summary judgment on this basis are denied.

### Plaintiff's Motion for Summary Judgment[17]

Plaintiff contends, in its Motion for Summary Judgment, that "the full amount of damages that the jury awarded in the Underlying Action Phase I Trial is subject to the Defendants' duty to indemnify." (ECF No. 81-1 at 19.) Plaintiff states, "Any attempt to

---

[17] Many of the arguments Plaintiff makes in its Motion for Summary Judgment have already been addressed herein and are not addressed separately.

allocate the jury's verdict between covered and uncovered losses, when no attempt to do so was made in the Underlying Action, would be speculative, and if covered losses were submitted to the jury, then the Insurance Defendants must indemnify their insureds for the entire verdict." (*Id.* at 15.)

To the extent Defendants seek to parse the jury verdict and "speculate what was in the jurors' minds" in order to determine covered versus non-covered damages, the undersigned agrees with Plaintiff and will conduct no such analysis. *See, e.g., Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614-15 (2005) (concluding, where case was submitted to the jury on three causes of action, and jury returned a general verdict in favor of the plaintiff, that insurance company was required to indemnity as to entire verdict, stating, "Our holding that the exclusion does not apply to the defamation claim means that Owners must indemnity Lands Inn for the Clayton general verdict"). CIC acknowledges that—as to Phase I—at least a portion of the verdict against its insureds is covered by CIC's policies, and as set forth herein, the exclusions claimed by Builders Mutual either do not apply or were waived. Because a portion of that verdict is covered, and because Defendants did not effectively reserve their right to contest coverage, the undersigned agrees with Plaintiff that the entire verdict as to Phase I is subject to Defendants' duty to indemnify.

Although Phase I involved a trial, as to Phase II, there is a settlement agreement between Plaintiff; Marick Home Builders, LLC; Rick Thoennes; CIC; and Builders Mutual. (*See* ECF No. 81-13.) The agreement states, *inter alia*,

> WHEREAS, The Stoneledge development was constructed in two phases. Likewise, the Underlying Lawsuit was divided for trial into two separate actions, Phase I and Phase II; and

WHEREAS Plaintiff obtained a judgment against Defendants in Phase I on November 8, 2013, which was subsequently amended by order of the court dated January 30, 2015, in the net amount, after credit for set-offs, of $2,144,088.23, which is accruing interest at the judgment rate (the Phase I Judgment); and

WHEREAS, in anticipation of the trial of Phase II against the Defendants, the Parties have agreed to compromise certain aspects of this claim in the form of a stipulation of damages, as set forth more fully below, and to release certain obligations of Rick Thoennes altogether.

**NOW, THEREFORE, IN CONSIDERATION** of the promises, covenants and agreements contained herein, the parties hereto agree as follows:

. . .

1. For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree that the damages sustained by the Plaintiff in connection with Phase II, as more fully set forth in the Underlying Lawsuit, are approximately and may exceed the sum of Five Million Six Hundred Thousand ($5,600,000.00) Dollars. Furthermore, the Defendants and Insurers are entitled to an offset of approximately Three Million Six Hundred Thousand and ($3,600,000.00) Dollars, representing amounts the Plaintiff has received from other sources. Therefore, the Parties stipulate that the damages which Plaintiff would otherwise be entitled to recover from the Defendants, subject to the terms of this Settlement Agreement and resolution of all coverage issues currently pending, is Two Million ($2,000,000.00) Dollars (hereinafter "Plaintiff's Total Phase II Damages"). Accordingly, trial for the sole purpose of establishing the exact amount of the Plaintiff's damages for Phase II is unnecessary.

2. The Plaintiff and Insurers agree to proceed with a declaratory judgment action for a determination of coverage under the policies issued by Cincinnati and Builders Mutual referenced above. Insurers will pay to Plaintiff the total sum of "covered damages," as defined herein. The parties agree that "covered damages" means the amount of Plaintiff's Total Phase II Damages that are covered for purposes of indemnification under the above-referenced Cincinnati and Builders Mutual policies, as determined by a final judgment in the above-referenced declaratory judgment action, after exhaustion of any appeals, up to a maximum of two Million ($2,000,000.00) Dollars (hereinafter "the Phase II Covered Damages"). This is not intended to be and does not limit the right of Plaintiff to also pursue recovery of sums related to the Phase I Judgment, except as expressly provided for herein, and subject to Defendants' appeal of the Phase I Judgment.

(ECF No. 81-13 at 2-3.)

Plaintiff argues it is entitled to summary judgment as to Phase II, again arguing Defendants waived their right to "contest any coverage issues." (ECF No. 81-1 at 12.) Citing the *Harleysville* decision, Plaintiff contends "[t]he same rational[e] that prohibits an insurer from attacking a general jury verdict or attempting to argue coverage after not properly preserving its rights[] precludes a post-agreement effort to allocate the . . . Phase II stipulation among covered and uncovered claims." (*Id.* at 22.)

Of course, the reservation of rights letters that are at issue in Phase I are the same letters that are at issue in Phase II. It stands to reason, then, that if the reservation of rights letters were deficient as to Phase I, they are likewise deficient as to Phase II. And much like a general verdict, the Settlement Agreement specifies that "that the damages which Plaintiff would otherwise be entitled to recover from the Defendants, subject to the terms of this Settlement Agreement and resolution of all coverage issues currently pending, is Two Million ($2,000,000.00) Dollars." (ECF No. 81-13 at 3.)

As set forth herein, Builders Mutual expressly advised Marick in the reservation of rights letter that "your work product is not covered." (ECF No. 81-7.) However, Builders Mutual did not inform Marick that it intended to litigate "what damages were attributable to non-covered faulty workmanship" or dispute coverage as to Plaintiff's claims for breach of warranty and breach of fiduciary duty. Additionally, Builders Mutual did not inform the insureds that a conflict of interest may have existed or that they should protect their interests by requesting an appropriate verdict or settlement agreement.

CIC's letter, even though several pages longer than the reservation letters issued

by Builders Mutual, did not expressly state CIC's position or give an indication that CIC disputed coverage for a specific claim or type of damages. The letter simply indicates that various exclusions "may apply" (and what appears to be a cut-and-paste of various exclusions). (*See* ECF No. 81-5.) CIC did not put the insureds on notice that it intended to litigate "what damages were attributable to non-covered faulty workmanship" or dispute coverage as to Plaintiff's claims for breach of warranty and breach of fiduciary duty. CIC did not inform the insureds that a conflict of interest may have existed or that they should protect their interests by requesting an appropriate verdict or settlement agreement.

In light of the foregoing, the undersigned concludes Plaintiff is entitled to summary judgment as to Phase II. *See Harleysville*, 803 S.E.2d at 300.

## Summary

As explained herein, there is evidence that work performed by Bostic was damaged; accordingly, Builders Mutual is not entitled to summary judgment as to the "your work" exclusion. Additionally, Builders Mutual is not entitled to summary judgment on its remaining coverage arguments, as Builders Mutual's reservation of rights letter was insufficient to effectively reserve the right to contest coverage. Builders Mutual's Motion for Summary Judgment (ECF No. 67) is therefore denied.

Likewise, CIC did not effectively reserve the right to contest coverage as to any of the exclusions claimed in the case *sub judice*. CIC's Motion for Partial Summary Judgment (ECF No. 80) is therefore denied.

Because some damages are covered by the policies, and because Defendants did not effectively reserve their right to contest coverage, Plaintiff's Motion for Summary Judgment (ECF No. 81) is granted.

## CONCLUSION

It is therefore ORDERED, for the foregoing reasons, that the Motion for Summary Judgment filed by Builders Mutual (ECF No. 67) is denied; the Motion for Partial Summary Judgment filed by CIC (ECF No. 80) is denied; and Plaintiff's Motion for Summary Judgment (ECF No. 81) is granted.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 28, 2018
Greenville, South Carolina