IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Stoneledge at Lake Keowee Owners Association, Inc.,      ) <br>      ) <br>      ) <br> Plaintiff/Counter Defendant,      ) <br>      ) <br> v.      ) <br>      ) <br>      ) <br> Cincinnati Insurance Company and      ) <br> Builders Mutual Insurance Company,      ) <br>      ) <br>      ) <br> Defendants/Counter Claimants.      ) <br>      ) | Civil Action No. 8:14-cv-01906-BHH <br><br><br> **OPINION AND ORDER** |

This matter is before the Court on Defendants Cincinnati Insurance Company and Builders Mutual Insurance Company's ("Defendants") motion to reconsider the Court's September 28, 2018 Order granting Plaintiff Stoneledge at Lake Keowee Owners Association, Inc.'s ("Plaintiff") motion for summary judgment and denying Defendants' motions for summary judgment. (ECF No. 121.) For the reasons set forth in this Order, the motion to reconsider is denied.

## BACKGROUND

The factual background and procedural history of this case are thoroughly set forth in the Court's prior Orders of March 13, 2018 and September 28, 2018 (ECF Nos. 119 & 121), and the Court assumes familiarity therewith. On October 10, 2018, the South Carolina Court of Appeals released opinions in two pending appeals from the trial of the underlying case: *Stoneledge at Lake Keowee Owners' Ass'n, Inc., et al. v. IMK Dev. Co. LLC, et al.*, Op. No. 5600 (S.C. Ct. App. Oct. 10, 2018) (ECF No. 126-1 at 2–21) (Marick Home Builders, LLC appeal); *Stoneledge at Lake Keowee Owners' Ass'n, Inc., et al. v.*

1

*IMK Dev. Co., LLC, et al.*, Op. No. 5601 (S.C. Ct. App. Oct. 10, 2018) (ECF No. 126-1 at 22–28) (Bostic Brothers Construction, Inc. appeal). In their motion to reconsider, Defendants contend that these appellate opinions reversed the trial court's reformation of the underlying $5,000,000 verdict, that the Court of Appeals' reinstatement of the initial verdict and related application of set-off constitutes new evidence, and that in light of this new evidence the Court should reconsider its ruling denying Defendants' motions for summary judgment on the breach of fiduciary duty claim. (*See* ECF No. 123 at 1–5.) Defendants further assert that the Court's ruling constitutes legal error and would work a manifest injustice against them in numerous ways. (*See id.* at 5–16.)

Defendants filed their motion to reconsider on October 12, 2018. (ECF No. 123.) Plaintiff filed its memorandum in opposition on November 1, 2018. (ECF No. 126.) This matter is ripe for consideration and the Court now issues the following ruling.

## LEGAL STANDARDS

The Fourth Circuit Court of Appeals recognizes three grounds upon which a party may successfully move the Court to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." § 2810.1 Grounds for Amendment or Alteration of Judgment, 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.). "Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered . . . ." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (citation

omitted). "'[M]ere disagreement does not support a Rule 59(e) motion.'" *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

## DISCUSSION

### A. New Evidence

In Opinion No. 5600, the South Carolina Court of Appeals stated:

It appears the trial court amended the jury's verdict to find that each cause of action independently supported a $5 million verdict. In doing so, the trial court invaded the province of the jury. *See Joiner v. Bevier*, 155 S.C. 340, __, 152 S.E.2d 652, 657 (1930) ("It is [the judiciary's] duty to enforce a verdict, not to make it."). Therefore, we find the jury's verdict, and its allocation of damages to the three separate causes of action should be reinstated.

The question then becomes how the court should allocate the setoff Marick and Thoennes are entitled to based upon the settlement the HOA received prior to trial. *Thoennes' fiduciary duty to the HOA was the result of his position on the Board of the HOA.* Based on the record, it does not appear any Board members settled with the HOA prior to trial. Therefore, none of the settlement proceeds should be set off against Thoennes' liability for breach of fiduciary duty because none of the settlement proceeds would have included any amount for damages resulting from a breach of fiduciary duty. Accordingly, Thoennes is responsible for the $1 million award for breach of fiduciary duty, subject to any claims he may have for contribution from any other defendants.

(ECF No. 126-1 at 20 (emphasis added).) The Court of Appeals went on to reapply the set-off for recovery from other settling defendants to the remaining $4,000,000 award for negligence and breach of warranty. (*Id.* at 20–21.)

In advancing their "new evidence" theory for reconsideration, Defendants focus on the Court of Appeals' statement that "Thoennes' fiduciary duty to the HOA was the result of his position on the Board of the HOA." (*See* ECF No. 123-1 at 3.) Defendants argue, "The Court of Appeals ruling clarifies that the damages awarded for breach of fiduciary

3

duty are based upon different duties than the damages awarded against the contractor defendants," and that, "this Court now has the clarity it sought in denying summary judgment on this ground." (*Id.* at 4.) Defendants further argue that because there is no jury verdict against Marick on the breach of fiduciary duty cause of action, coverage does not exist for the breach of fiduciary duty judgment against Thoennes. (*Id.* at 5.)

First, there was never any jury verdict against Marick for the breach of fiduciary duty claim, so the Court of Appeals' opinion does not constitute new evidence in this regard. Second, the Court of Appeals' statement that "Thoennes' fiduciary duty to the HOA was the result of his position on the Board of the HOA," was made purely in the context of the Court of Appeals' analysis of how to properly apply the set-off. (*See* ECF No. 126-1 at 18–21.) It was decidedly not a substantive declaration about the merits *vel non* of Plaintiff's "alter ego" or "amalgamation" theory. (*See id.*)

In its amalgamation theory, Plaintiff alleged that a blurring of the distinction between, *inter alia*, Marick, Theonnes, and IMK, rendered their interests and activities one and the same. (*See* Underlying Third Am. Compl. ¶¶ 51 & 61, ECF No. 68 at 16 & 18.) The Court of Appeals found that the trial record "reveals evidence of a unified operation between Marick and the amalgamated parties as well as evidence of self-dealing that resulted from a blending of their business enterprises." (ECF No. 126-1 at 16.) The Court of Appeals stated: "Rick Thoennes' own testimony further established the joint nature of the Stoneledge enterprise."; "In the eyes of the HOA members, IMK, Marick, and the individual investor parties serving on the HOA board were one and the same."; and "Given that Marick's and IMK's profits were entirely dependent on IMK's ability to sell the units, their operations were clearly in pursuit of a common business purpose, albeit

to the detriment of the HOA members. Accordingly, we find evidence supports the trial court's single business enterprise ruling." (*Id.* at 17.) Thus, the Court of Appeals' opinion supports Plaintiff's assertion that any actions Thoennes undertook on behalf of IMK, he simultaneously and jointly undertook on behalf of Marick.

As the Court previously noted: (1) Thoennes is an insured under the relevant policies with respect to actions he took on behalf of Marick (*see* ECF No. 78 at 18 (defining "who is an insured" as to Builders Mutual policies); ECF No. 81-15 at 25 (same as to CIC policies)); and (2) Plaintiff alleged its breach of fiduciary duty claim against "Developers," which—according to the Third Amended Complaint—included IMK, Marick, and Thoennes (*see* ECF No. 68 at 21-22). (*See* Summ. J. Order, ECF No. 121 at 40–42.) It stands to reason that if Thoennes is "an insured" for actions he took on behalf of Marick, and Marick and Thoennes' interests and activities are considered one and the same for purposes of the breach of fiduciary duty cause of action, then Theonnes is "an insured" for purposes of that cause of action. If anything, the Court of Appeals' opinion strengthened the viability of this reasoning. In any event, it does not constitute new evidence and the motion to reconsider premised upon a "new evidence" theory is denied.

**B. Legal Error and Manifest Injustice**

Defendants' overarching argument is that the Court's September 28, 2018 ruling inappropriately broadened the South Carolina Supreme Court's holding in *Harleysville Grp. Ins. v. Heritage Communities, Inc.*, 803 S.E.2d 288, 292 (S.C. 2017), and that the ruling will work manifest injustice "because the effect of this ruling is to undermine the efficacy of insurance contracts in the state of South Carolina" by giving " insureds and claimants free license to ignore the language of insurance policies based upon any defect

courts may find in reservation of rights letter [sic] under an *ex post facto*, discriminatory standard of review." (ECF No. 123-1 at 5.) With respect, the argument is hyperbole and cannot sustain Defendants' motion to reconsider. In a declaratory judgment action pertaining to insurance coverage issues, this Court's duty is to faithfully apply the South Carolina Supreme Court's holdings and reasoning, which is what the Court did in its September 28, 2018 Order. *See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue.").

### 1. Standing to contest reservation of rights letters

Defendants assert that the *Harleysville* court's grant of third-party standing to assert waiver was based on the specific circumstances in that case, that those circumstances are not present in the instant case, and that grounds do not exist for an implied assignment of rights here. (*See id.* at 6–8.) The Court disagrees and finds that: (1) the circumstances in the instant case bear a significant similarity to those at issue in *Harleysville*; and (2) that similarity counsels toward, not away from, finding an implied assignment of rights here. As in *Harleysville*, Plaintiff acquired judgments against the carriers' insureds, which were "obtained after an actual trial." *See* 803 S.E.2d at 297. Defendants, through their policies, consented to suit by a party holding a judgment against their insureds (s*ee, e.g.*, '08 CIC Policy, ECF No. 81-15 at 28; '05 Builders Mutual Policy, ECF No. 50-4 at 44), as was the case in *Harleysville*. 803 S.E.2d at 297. In this

6

context, the *Harleysville* court reasoned, "It would defy logic to conclude that the [plaintiff property owners' associations ('POAs')] had the ability to sue Harleysville directly on the policy but lacked the ability to assert in the insured's stead that Harleysville is precluded from denying coverage based on alleged deficiencies in its reservation letters, especially since the POAs and the insureds share an identical interest in maintaining coverage." *Id.* Even acknowledging the general principle that "allowing a third party to challenge the adequacy of an insurer's reservation of rights is the exception and not the rule," *see id.*, the Court finds that the circumstances of this case are sufficiently analogous to those at issue in *Harleysville* to qualify Plaintiff for the same exception the South Carolina Supreme Court granted to the POAs in that case. Accordingly, the Court's application of the *Harleysville* decision with respect to Plaintiff's standing to contest the reservation of rights letters was not erroneous, and the motion to reconsider on this basis is denied.

### 2. Factors supporting a finding of waiver or estoppel

Defendants next contend that the *Harleysville* court's ruling that the insurer waived its coverage was based on the specific circumstances of that case—namely, the South Carolina Supreme Court's finding that "Harleysville knew precisely how to protect its interests, but elected to be purposefully vague on all coverage arguments, except punitive damages," 803 S.E.2d at 299; that Plaintiff must prove those same "factors" in order to assert waiver or estoppel in this case; and that there is no evidence to support the "factors" here. (*See* ECF No. 123-1 at 8–10.) Defendants argue that *Harleysville* is distinguishable because "the subsequent change in law governing reservation of rights letter [sic] precludes any finding that Defendants 'knew precisely how to protect their interests.'" (*Id.* at 9.) And further, "Plaintiff presented no evidence that Defendants 'elected

to be purposefully vague.'" (*Id.*)

These arguments miss the mark. If it were the case that an insurer defendant needed a preexisting, on-point decision by the state Supreme Court before it could be deemed to have waived its rights because it "knew precisely how to protect its interests" but failed to do so, then the *Harleysville* ruling itself could never have been issued. Defendants' assertions of legal error on this point ring more as frustration with how, in their view, "*Harleysville* dramatically changed the law regarding reservation of rights letters in South Carolina" (*id.*), than as an articulation of how this Court supposedly misapplied the *Harleysville* ruling. However, in the context of the instant Rule 59(e) motion, as with all others, "mere disagreement" will not suffice. *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). Plaintiff was not required to prove "factors" supporting waiver or estoppel beyond the uncontested facts that the Court specifically considered when rendering its summary judgment ruling. Accordingly, Defendants' motion to reconsider based on an alleged failure of proof in this regard is denied.

### 3. The effect of a general verdict in the underlying case

Defendants' next argument for reconsideration is that South Carolina case law does not support the position that a general verdict cannot be allocated in a coverage action. (ECF No. 123-1 at 10–12.) They assert that the opposite is true because insurers "are not bound by findings in the underlying case when the insurer's interest is not aligned with the insured's interest on that particular issue." (*Id.* at 10 (citing *Sims v. Nationwide Mut. Ins. Co.*, 145 S.E.2d 523, 525–26 (S.C. 1965).) Defendants attempt to support these assertions by distinguishing South Carolina law that is directly on point. Suffice it to say,

Defendants have not shown the presence of clear legal error in the Court's summary judgment ruling on this issue, and the motion to reconsider on this basis is denied. *See Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005) ("[S]ince the Clayton jury returned a general verdict, a finding that any of the three claims submitted to that jury is not excluded answers the coverage question."); *see also Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 547 (S.C. 2009) ("[I]t is not possible from the record before this Court to determine what portion of the arbitrator's itemized list of damages may be attributed to the removal and replacement of the defective stucco, and it is not the purpose of this declaratory judgment action to relitigate the issue of damages.").

### 4. "Non-waiver" provision in the policies

Defendants next assert that this Court did not consider the effect of the "non-waiver" provision in the policies and that *Harleysville* is not controlling on this issue because it was never raised to or ruled upon by the *Harleysville* court. (ECF No. 123-1 at 12.) This assertion is entirely without merit. Defendants' sought certification of the question whether "non-waiver provisions in insurance policies preclude waiver as applied" to reservation of rights letters. (ECF No. 119 at 19.) The Court specifically considered this issue, including the applicability of *Harleysville*, in its March 13, 2018 Order. (*Id.* at 19–20.) Defendants have not shown any of the predicate conditions for reconsideration of this issue, and the motion to reconsider on this basis is denied.

### 5. Known loss issue

The motion to reconsider briefly raises points about the timing of CIC's reservation of rights letter as it relates to the 2010-11 and 2011-12 coverage terms. (*See* ECF No. 123-1 at 12.) However, the motion fails to explain how any of the predicate conditions for

reconsideration of this issue are met, and the motion is denied to the extent it is premised on this basis.

**6. "Your Work" exclusion**

Defendants argue that the Court misapprehended Builders Mutual's arguments regarding the "your work" exclusion, failed to analyze what constituted the insured's "work," and erred as a matter of law by failing to follow the policies' definition of "your work" such that the exclusion did not apply. (*See id.* at 12–13.) With respect, the Court fully understood Builders Mutual's arguments when it issued a ruling adverse to Builders Mutual's interests. That ruling was well founded in case law pertaining to the "your work" exclusion. (*See* ECF No. 121 at 30–32 (citing cases).) Defendants have not effectively distinguished the instant case from other cases interpreting the "your work" exclusion. *See, e.g.*, *Jessco, Inc. v. Builders Mut. Ins. Co.*, 472 F. App'x 225, 229-30 (4th Cir. 2012) (rejecting insurer's claim that the "your-work" exclusion barred coverage where claims asserted against insured created a possibility that third-party's work or property was damaged by the faulty workmanship of insured or its subcontractors). Accordingly, the motion to reconsider on this basis is denied.

**7. Set off**

The motion to reconsider rehashes, in summary fashion, Defendants' contention that only a portion of Plaintiff's recovery for Phase II constitutes covered damages, and that the $2,000,000 stipulated damages amount should be allocated based upon Marick's percentage of fault. (*See* ECF No. 123-1 at 13–14.) In its September 28, 2018 Order, the Court found that Plaintiff was entitled to summary judgment as to Phase II because the Court agreed with Plaintiff's contention that the same reasoning which prohibits an insurer

from attacking a general jury verdict, or from arguing coverage after failing to properly preserve its rights, precluded a post-agreement effort to allocate the Phase II stipulated damages among covered and uncovered claims. (*See* "Applicability of Set-Off" & "Plaintiff's Motion for Summary Judgment," ECF No. 121 at 42–47.) The Court concluded that the reservation of rights letters deemed deficient as to Phase I were likewise deficient as to Phase II. (*Id.* at 46.) It is not this Court's role to determine Marick's percentage of fault with respect to Phase II any more than with respect to Phase I. The Court is informed that Marick was the only general contractor during Phase II and was given the benefit of all Phase II settlements in determining the amount of stipulated damages. Defendants fail to articulate clear legal error in the Court's analysis of these issues and appear to simply disagree with the result reached in the summary judgment ruling. The motion to reconsider on this basis is denied.

### 8. Effect of the Phase II Settlement Agreement

Finally, Defendants argue that the Court's September 28, 2018 ruling gives prejudicially broad applicability to the *Harleysville* decision by finding the "exceptional circumstances necessary to support . . . third-party standing" to assert waiver or estoppel without first requiring a showing that Defendants were "purposefully vague" in the reservation of rights letters, and without first clarifying whether prejudice or detrimental reliance was required on the part of the party asserting waiver or estoppel. (*See* ECF No. 123-1 at 14–16.) In essence, Defendants assert that the "factually specific nature" of the *Harleysville* case, in conjunction with the *Harleysville* court's "lack of clarity" regarding what elements must be established to support a finding of waiver or estoppel, render the *Harleysville* decision inapposite to "evaluat[e] the effect of a partial settlement entered

into before the *Harleysville* opinion was released." (*See id.*)

At bottom, Defendants are contesting this Court's application of the reasoning from the *Harleysville* opinion to the specific circumstances presented by Phase II of the case *sub judice*. It is true that *Harleysville* involved a general jury verdict and not a settlement agreement; but it is equally true that Phase I of the instant case involved a general jury verdict that could not be allocated between covered and uncovered damages, and that the reservation of rights letters at issue as to Phase I are the same letters at issue as to Phase II. (*See* ECF Nos. 119 at 21; 121 at 46.) The undersigned does not believe that Defendants have shown that the Court committed clear legal error by extending *Harleysville* in this respect. Rather, the Court had an obligation to apply the South Carolina Supreme Court's jurisprudence as faithfully as possible in a situation where that court had not directly spoken on the issue. *See Private Mortg. Inv. Servs., Inc.*, 296 F.3d at 312.

The Phase II settlement agreement states, in pertinent part, "The Plaintiff and Insurers agree to proceed with a declaratory judgment action for a determination of coverage under the policies issued by Cincinnati and Builders Mutual referenced above." (ECF No. 81-13 at 3.) It would appear, however, that Defendants seek a full-blown trial that essentially replicates the underlying action but focuses on Phase II instead of Phase I. Leastways, it is entirely unclear how the Court could do anything but speculate about Marick's percentage of fault and the allocation of covered and non-covered damages, without delving into the minutiae of the merits of causes of action that have not been raised in the instant case—e.g. negligence, breach of warranty, and the like. Such an inquiry is well beyond the scope of this declaratory judgment action. Thus, Defendants'

motion fails to demonstrate that any of the predicate reasons for reconsideration are met, and the motion to reconsider based on the theory that this Court applied *Harleysville* too broadly is denied.

## **CONCLUSION**

It is therefore ORDERED, for the foregoing reasons, that Defendants Cincinnati Insurance Company and Builders Mutual Insurance Company's motion to reconsider (ECF No. 121) is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge


August 21, 2019
Greenville, South Carolina